## 9073

### SCOTT v. LIVERPOOL & LONDON & GLOBE INS. CO.

#### (86 S. E. 484.)

FIRE INSURANCE.   IDENTITY OF SUBJECT MATTER.   FORFEITURE.   WAIVER.
EVIDENCE.

1. FIRE INSURANCE—IDENTITY OF SUBJECT MATTER.—The question as to
identity of subject matter of insurance was properly for the jury,
in a case where the description in a policy agreed with the testimony
in two particulars, and was strengthened by the testimony as to
value, although there was a variance between the description in
policy and the testimony in a third particular, and circumstantial
evidence tending to show bad faith on part of the insured in pre-
senting the claims.

2. INSURANCE — CONSTRUCTION — FORFEITURES. — Forfeitures are not
favored by the Courts, and a contract of insurance, so far as a for-
feiture clause is concerned, must be taken most strongly against the
insurer.

3. EVIDENCE—BURDEN OF PROOF.—It is well settled that he who pleads
must prove.

4. INSURANCE—INTERESTS INSURABLE—EQUITABLE TITLES.—An equitable
title, as well as a legal title, is the subject of insurance.

5. INSURANCE—WAIVER OF PROVISIONS.—An insurer may waive a provi-
sion in a policy made for its benefit.

6. INSURANCE—CONSTRUCTION OF POLICY—GROUNDS OF FORFEITURE—"SOLE
OWNER"—"SOLE OWNERSHIP."—Where a standard policy, framed
to cover either real or personal property, provided that it should be
void if the interest of the insured were other than unconditional and
sole ownership, or if the subject of the insurance were a building on
ground not owned by the insured in fee simple, the second of such
grounds of forfeiture plainly referring to the tenure of land, the
inference was reasonable that the first of such grounds did not apply
to a dwelling house on a farm built for farm purposes, as such a
house is real estate and the words "sole owner" do not aptly describe
a person's undivided fee simple interest in, or sole tenure of, land
unless the plain intent of the parties is to stipulate about a land title,
while the words "sole ownership" do describe an exclusive holding
of personal property.

7. INSURANCE—FORFEITURE—OWNERSHIP OF LAND—"OWNERSHIP."—An
owner of an undivided five-sixths interest in land on which an insured
building was built did not meet the requirements of a policy provid-
ing that it should be void if the subject of insurance was a building
on ground not owned by the insured in fee simple, since he was only
a part owner of the fee simple title, while "ownership" implies sole-
ness

8. INSURANCE—FORFEITURE—OWNERSHIP OR INTEREST IN LAND.—Where plaintiff at the time he obtained a policy on a building, providing that it should be void if the building was on land not owned by insured in fee simple, knew that he owned only a five-sixths interest therein; the ground of forfeiture was not removed by the subsequent allotment to him on a partition of the land of the part on which was the building; he having no legal or equitable right at the time the policy was issued to have that part of the land allotted to him.

9. FIRE INSURANCE—FORFEITURE—WAIVER.—Where a contract of insurance was made in June, the property insured burnt in August, and within a week thereafter the insurer being notified of the loss, discovered that the insured owned only a five-sixth undivided interest in the property insured and then retain, without offering to return the unearned premium, the question whether he waived the right to declare a forfeiture, because of the state of the title, was properly submitted to the jury.

10. EVIDENCE—RELEVANCY—PREJUDICIAL ERROR.—The admission of testimony as to habit of other insurance companies with reference to inspection of risks, is incompetent against a defendant insurer, but the admission of such testimony in case at bar, *held* not prejudicial.

11. INSURANCE—FORFEITURE—QUESTIONS FOR JURY.—Under an insurance policy providing that it should be void if the subject of insurance was a building on land not owned by insured in fee simple, and that if the policy should become void the unearned portion should be returned on surrender of the policy, where the company, after learning that insured owned only a five-sixths interest in the land on which was the insured building, denied liability on the whole contract, insured was not required to surrender up the policy in order to get the refund of the part of the premium he had paid, and though he failed to surrender the policy, the failure of the company to return the unearned premium, demand a surrender of the policy, and insist upon a forfeiture was evidence, properly submitted to the jury, of an intention not to stand upon the words of the contract.

Before GARY, J., Kingstree, Spring term, 1914. Affirmed.

Action by J. C. Scott against Liverpool and London and Globe Insurance Company. From judgment for plaintiff, defendant appeals.

FOOTNOTE.—As to how far an undivided interest in property is a complete or full ownership for the purposes of insurance, see note in 18 L. R. A. 481. Retention of policy as waiver of mistake or fraud as to state of title, see note in 67 L. R. A. 731.

*Messrs. Frank G. Tompkins* and *LeRoy Lee,* for appellant, submit: *Provisions as to title valid:* 98 S. C. 244; 93 S. C. 363; 70 S. C. 296; 3 Ga. App. 130; 60 S. E. 118. *Description of property being wrong, remedy, if any, was by reformation:* 98 U. S. 85; 136 U. S. 287; 40 W. Va., 518; 32 Am. St. Rep. 908; 185 N. Y. 84. *Evidence inadmissible to vary terms of policy:* 183 U. S. 308. *Duty of insured to read contract, estoppel:* 78 S. C. 420; 9 S. C. 43; 9 Cyc. 90.

*Messrs. Kelley & Hinds,* for respondent, cite: *Questions as to testimony not material:* 38 S. C. 471. *.Provision as to ownership:* 98 S. C. 260; 138 Am. St. Rep. 171; Ann. Cas. 1913b, 210; 17 Fed. 63; May on Insurance, sec. 287c; 179 Penn. St. 381; 89 Fed. 932; 41 S. W. 513; 102 Wis. 394; 65 Fed. Rep. 165; 107 Iowa 80; 67 Minn. 514; 29 Conn. 10; 76 Am. Dec. 581; 93 Am. Dec. 289; 29 Am. Rep. 271; 91 Cal. 323; 25 Am. St. Rep. 191; 29 Conn. 10; 76 Am. Dec. 581; 5 Am. St. Rep. 159; 35 Mich. 481; 57 Am. St. Rep. 20; 48 S. C. 225; 2 Hill Eq. 421; 14 S. C. 321; 23 S. C. 95; 8 How. 246; 6 L. R. A. 835; Marshall Ins. 481. *Insurer had knowledge of state of title:* 36 S. C. 213; 48 S. C. 195; 52 S. C. 224; 97 S. C. 526; 81 S. C. 152; 88 S. C. 37. *Forfeitures not favored:* 144 U. S. 439. *Waiver:* 36 Mo. App. 118; 52 Mo. 172; 42 Mo. 456; 97 Am. Dec. 349; 43 Mo. 148; 97 Am. Dec. 383; 47 Mo. 435; 4 Am. Rep. 337; 35 Mo. 172; 13 Enc. Ev. 1023. *Charge as to waiver:* 51 S. C. 476; 148 Fed. 145; 9 Wall. 254; 28 Am. St. Rep. 99; 33 Minn. 111; 44 Am. St. Rep. 756; 13 Enc. Ev. 1022; 57 S. C. 370.

April 2, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Judgment below upon a verdict for the plaintiff for eighteen hundred ($1,800.00) dollars; appeal by the defendant.

The suit is on a policy of insurance against fire. The subject of insurance is a dwelling house. The insured is a young man 28 years of age.

The house was situated in the country, on or near a highway which runs from Kingstree east towards Rhems and seven miles from Kingstree. There was confessedly a total destruction of the house, and there is no issue on that score. And no cause for the fire other than an accidental one, has been suggested.

The testimony and the argument has to do with three houses, one on the one side of the highway and two on the other side thereof.

That on the north is confessedly the old Scott homestead, and will be referred to as the homestead house. '

One of those two on the opposite side of the road is a new two-story dwelling house, and it is confessedly not the house which was insured, and it was not burned, and is out of the case.

The other of the two houses on the opposite side of the highway is that which was burned, and is that the plaintiff claims to have had insured. It will be referred to as the Tisdale house, for people by that name owned it.

The Scott homestead house and the Tisdale house were separated the one from the other 450 yards.

There are five exceptions, but there are but three issues to be decided; they are (1) was incompetent and harmful testimony admitted for the plaintiff? (2) Was the house which was burned that which was insured? (3) Was the plaintiff the sole owner of the building, and the owner in fee simple of the land on which it stood? and if not, was that warranty waived?

The appellant contends, that the only reasonable inference to be drawn from the testimony is in negative of the

2d and 3d questions; and for that reason the Court ought to have directed the jury to find for the defendant.

It was candidly stated at the bar by appellant's counsel and in his oral argument that the third issue was the strongest defense. We so regard it; and to that we shall chiefly direct a consideration. The second defense is, however, somewhat joined to the third, and the two will be concurrently considered, but the second will be taken up now.

The appellant's counsel makes a serious complaint against the plaintiff; he goes to the extent of charging bad faith against him, both in pretending that the house burned was that insured, and in pretending that he was the sole owner of the house burned, and the owner in fee simple of the ground on which it stood. The charge was not alleged in the answer, nor was it expressly made in the printed brief, but it was in terms made in oral argument at the bar. For that reason, and because of the manifest faith of appellant's counsel in his cause, we are minded to discuss the facts of the controversy more fully than is perhaps proper in a law case.

The charge of bad faith refers more particularly to the question of identity of the house which was the subject of insurance. The testimony does not sustain the charge.

The house is thus described in the policy, omitting the numerals, which are put in parenthesis:

"On the (1) one and one-half frame building with shingle roof, (2) occupied as a dwelling house, * * * (3) situate on the public road north side, from Kingstree to Rhems."

There are, therefore, three earmarks of the property insured.

Both parties, Speigner, the agent for the insurance company, and the plaintiff, agree that the agent got the description from the lips of the plaintiff.

The very clear preponderance of the testimony is that the Scott homestead house is a one-story house and that the

Tisdale house is a story and a half. The first description therefore makes for the plaintiff as to identity. The second description is simply that the house insured was "occupied as a dwelling house;" not as plaintiff's dwelling house; and it is not claimed that plaintiff ever told the agent that he occupied the house. The proof is the house was occupied as a dwelling house. So the second description was true.

The chief controversy was about the third description. The agent first testified that the plaintiff described the house to him as on the north side of the road, and he then testified "I don't know whether he said north side or not, but he said across the road from the new house he was building;" and the agent testified the new house was on the south side of the road.

The plaintiff testified he told the agent the house to be insured was on the east side of the road, and the plaintiff says the house is on the east side of the road. It is not remarkable that the witnesses differed thereabout; they also differed about other questions not in issue; the agent testified he solicited of the plaintiff insurance on the new house the plaintiff was then building in the near vicinity; the plaintiff pointedly denied that.

The agent testified he read over to the plaintiff, at the delivery of the policy, the description of the insured property; the plaintiff inferentially denied that he testified he "didn't notice the policy, didn't read it over after he gave it to me."

Furthermore, when the policy was made the plaintiff was not and did not pretend to be the owner of the Scott homestead house; it was occupied by his mother and some of her children; the land had been "divided up," the plaintiff thought before the contract of insurance, and that part with the house on it was awarded to another son than the plaintiff. So if the policy had covered the Scott homestead house, as the agent supposed it did, the contract of insurance

would certainly have been void, and the plaintiff's plight would have been no better.

But there is another strong circumstance to indicate that the house plaintiff intended to insure was the Tisdale house and not the Scott homestead house; it is outside of the description in the policy, and not at variance with it. Three witnesses testified that the Tisdale house was worth more than two thousand dollars. Two witnesses testified the Scott homestead house was worth only $800.00; that it had only four rooms and was of very inferior construction. The insurance agent testified he "had a very good idea of its worth and surroundings;" but he never testified as to its value, nor did any witness put its value above $800.00.

It is so improbable as not to be true, that so careful an agent as Mr. Speigner appears to have been would have insured for $1,800.00 a house he was "familiar with," and which all the witnesses say was worth only $800.00.

The defendant, though, has dwelt much on a circumstance in its favor, to wit: that one of the Scott boys, there were four of them, told Mr. Epps that the house burned was not the house insured, and Mr. Epps repeated that declaration to the insurance agent, Mr. Speigner.

That is hearsay mounted on hearsay.

The testimony does not show how the brother knew what was the contract of insurance; or that he ever made a declaration to Epps. The only thing proven is, that Epps made a declaration to Speigner.

Mr. Epps was in Court, but neither side seemed over anxious to hear what he had to say about the incident.

The defendant relies yet on other circumstances to show that the house burned was not that insured. The plaintiff was slow to report the loss, he was slow to bring his suit, he "looked confused and embarrassed" when he went to Speigner and reported the loss, he was evasive and unsatisfactory on the witness stand.

But these are all suggestions of *intent,* subtle in character, and are peculiarly circumstances to be weighed and considered by the jury.

In view of the grave issue of the identity of the house to be insured as made by the testimony, it was clearly the duty of the Court to submit that issue to the jury.

The next question, that we have numbered three, is of more interest and perhaps of more difficulty. It is true that when two persons make a written contract, the terms of which are not denied, and which are plain, a Court ought to hold them to the performance of the contract. The difficulty lies in the application of the rule to the complex circumstances of the concrete cases. This is a brief but a true statement of the transaction between the parties; a farmer man living seven miles in the country, at a place where there were three dwelling houses in which he had more or less interest and all within a radius of 450 yards, went to an insurance agent in the town of Kingstree and applied for a policy of insurance for $1,800.00 on one of the houses; the agent had been in the vicinity one and a half years before "and was familiar with the (Scott homestead) property;" the agent made no enquiry about the man's title; for "when a man walks in the office and asks for insurance on his building, why, you presume too much when you go and ask him a whole lot of questions. If you walked in and asked us to insure your building, I wouldn't ask you how you came by it." The agent wrote and delivered the policy, and received therefor the premium of $21.60, which the insurance company yet retains; the man took the policy and left the office; the house was burned up; the man asked for the $1,800.00 stipulated in the contract; the company answers, "the contract of insurance is void."

And that suggests an examination of those words of the contract which suggest forfeiture. It is a "standard policy"

worded to cover either houses or personalty and takes up ten pages of the printed case, thirty-five lines to the page.

On the sixth page of it there are specified thirteen grounds for its avoidance, and the defendant here puts its finger on the 5th and 6th grounds to work a forfeiture of its contract to pay.

There are (5) "if the interest of the insured be other than unconditional and sole ownership" and (6) "if the subject of insurance be a building on ground not owned by the insured in fee simple."

It is well settled that forfeitures are not favored by the Courts. It is also settled that a contract of insurance, so far as a forfeiture clause is concerned, must be taken most strongly against the insurer.

It is also settled that he who pleads must prove.

It is also settled that an equitable title is the subject of insurance as well as a legal title.

It is also settled that the insurer may waive a provision in the policy made for its benefit.

We think the defendant has not brought itself within all these rules so as to avoid its contract.

Since the defendant stands upon the letter of the law, it may well be doubted if the 5th ground of forfeiture is relevant to the case at bar. There is plainly no "condition" to hamper the plaintiff's ownership. The thing "owned" in the instant case is land, not personalty; for a dwelling house built on a farm for the purposes of the farm, is real estate. The tenure of land is more or less technical, and is described by technical words. The words "sole owner" are not apt to describe a person's undivided fee simple interest in or sole tenure of land, unless the plain intent of the parties was to stipulate about a land title.

But the words "sole ownership" do describe an exclusive holding of personal property; and this standard policy was framed to include both character of property, real and personal.

And inasmuch as the parties plainly contracted in the next sixth ground of forfeiture about the tenure of land, the inference is reasonable that they had not done so in the fifth ground of forfeiture.

We are therefore of the opinion that the sixth ground of forfeiture is the contract which must control in the instant case.

The inquiry therefore is, has the sixth ground of forfeiture been established by the defendant.

The argument is this, proof that the plaintiff only had at the contract of insurance a fee simple interest in five-sixths of the whole title comes within the meaning of the contract and works a forfeiture of it.   That he had such title is not seriously contested, if at all.

The earlier policies of insurance were generally based on representations by the insured to the insurer about the insured's interest; and such representations were not regarded by the Court as warranties, the inaccurateness of which should work an avoidance of the contract.   In those cases where the representation did not accord with the fact, it was left to the jury to inquire if the representation was such as to have likely affected the underwriter in taking or in rejecting the risk.   *Insurance Co. v. Lawrence,* 10 Peters 516.

But the insurance companies came in time to write other policies; they came to make contracts whereby an incorrect representation of the interest of the insured, with or without express intention, would of itself by express words avoid the contract.

The contract here stipulates Scott must have owned the land in fee simple, and if he was not such owner, the contract should be void.   He was the owner in fee simple, but it was not sole, for ownership implies soleness.   Black's Law Dictionary, Bouvier's Law Dictionary, Webster's Dictionary.

If the ownership of a five-sixth undivided interest constituted Scott owner, then the ownership of a much smaller undivided interest would so constitute him.

And on the other hand, if a five-sixth undivided interest is not sufficient to constitute him sole owner, neither would the largest undivided interest short of the whole so constitute him.

At most, therefore, Scott was only a part owner of the fee simple title; five-sixths of it was in him and one-sixth of it was in other parties.

Nor was Scott the equitable owner of the other one-sixth. He knew that there was outstanding in others a one-sixth when he insured the dwelling house, and he therefore had no equity, in the suit for partition which he instituted, to have that particular 135 acres on which the house stood set off to him.    Had he under like circumstances, that is, with full knowledge of an outstanding one-sixth, built the house there would have arisen no equity to have it assigned to him without the count of its cost.    *Johnson* v. *Pelot*, 24 S. C. 264, and cases there cited.

There was therefore no process in law of equity by which Scott could have followed to a consummation the rights he had in June, 1912, and procured the 135 acres to be surely assigned to him, or in the event of a sale for partition, had the value of the house assigned to him without account for it.

The case is not altered that Scott at the wind up, the judicial sale had to effect partition, became the owner in fee of the whole six-sixths title to the 135 acres.    He fell without the terms of the contract on the day it was made. That is the test of his right.

We stand now "at the parting of the way."    It is true two persons may make a contract with a forfeiture for one side, and if it is plain in its terms, and there is no lawful escape from its mandate, then the penalty must be paid. But if there be a way of escape, if the facts and circum-

stances of the particular case permit a saving of the contract, that will be done.

The contract here was not considered item by item and then accepted; its terms were not proposed on the one side by word of mouth or by paper sheet and accepted on the other side by word of mouth; the agent, Speigner, did not say to Scott what interest have you in this dwelling house; he was perhaps not lawfully bound to ask that; Scott did not tell Speigner that he had less than the sole fee; he perhaps did not know that was necessary, nor did Speigner; Speigner was provided with a standard contract, made up by the company to cover every sort of a case; Scott had to accept that sort of contract or none; Scott relied on Speigner, and Speigner relied on the company; the contract had in it a sword, as well as a shield.

The policy then was made under those circumstances. They do not afford valid ground for ignoring the contract; but they suggest a minute examination of all of its provisions, to see if there be a way of escape from a patent miscarriage of justice.

The sixth ground of forfeiture was made for the benefit of the company.

There might arise a case where its invocation would be necessary to prevent a serious wrong. In that case it ought to be speedily applied. But there might be a case where the company doubted the wisdom or the reasonableness of its application; the insured might own practically the whole title; he might have acted in good faith; he might have paid his premium; and nearly all of it might have been unearned at the burning; the company might prefer to keep the premium, waive the condition and pay the loss.

That is this case; the policy itself provides the escape from forfeiture and for the effecting of justice; it contains this pertinent clause:

"If this policy shall * * * become void * * * the premium having been actually paid, the unearned portion shall be

returned on surrender of this policy * * * this company retaining the customary short rate."

The insurance was effected in June; the fire occurred in August; the company had notice in a week thereafter; it discovered the defect in title; it kept the premium, and keeps it now; it was so admitted at the bar; it has not followed the letter of the policy, but has waived the letter; and the policy stands with the forfeiture clause eliminated by the choice of that party who made it; it thus saves the insured and it saves itself; for the interest insured was greater than the amount of the policy, and the company got what it was entitled to have, the premium for the year.

We revert now to the first stated issue made by the appeal, the testimony of Mr. Byrdic and Mr. Kelley about the habit of other companies to make inspections before the issuance of policies.

The Court ruled that so far as other companies were concerned, the proof of their habit was incompetent against this company.

In so far as the testimony referred to the habit of the defendant, if not competent, it was relevant only to the second issue; and was only remotely relevant to it.

We do not regard it as a sufficient error, if error at all, to set the verdict aside.

The judgment of the Circuit Court is affirmed.

A petition for rehearing having been filed, the Court filed the following order:

October 16, 1915.

PER CURIAM.  We have carefully considered the petition for a rehearing, and must decline the motion.

It is true that if by the contract the insured has incurred a forfeiture of his right, the insurer may in some cases do

nothing and stand on the contract, which includes the retention of the premium paid. And a failure to return it, and nothing else done, shall not be counted against the insurer.

But that is not this case.

This is the whole paragraph of the policy contract relevant to the matter in issue, except the italics and numerals are added:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation.

(1) If this policy shall be cancelled as *hereinbefore provided,* (2) *or become void* or cease, the premium having been actually paid, the unearned portion shall be returned on *surrender of this policy* or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice, it shall retain only the *pro rata* premium." It is not even a contract to return the whole premium, but only a part of it.

The policy was not cancelled at the request of the insured; it was not cancelled by the company on five days' notice.

These were the two cases "hereinbefore provided" for. But there was another case provided for, to wit, *or* if the policy should "become void."

By the defendant's own contention that case has arisen. The insurance was writ in June; the premium was paid in June; the fire happened in August; the company refused in August to pay; there was ten months' unearned premium; the *contract* was in that case to return it, or part of it.

It is true the contract provides the unearned premium shall be returned "on surrender of the policy." But we think that may not be construed to mean that the insured must, in a case where his whole right is denied, surrender up the evidence of his whole right, in order to get the refund of a part of the premium he has paid. The company did not indicate it desired a surrender of the policy.

The company in effect said to the insured in August: "You only owned a five-sixth (5-6) interest, I will pay nothing; the contract is void." There was no necessity to surrender the policy to get returned a fraction of the premium, when the insurer denied liability on the whole contract.

The company in effect said, "you need not surrender in order to get the unearned premium, for we deny all liability to you, premium and principal; the whole contract is at an end."

It may be the company might, under the contract, have returned the *pro rata* of the unearned premium, demanded the surrender and insisted upon the forfeiture. It did not choose to do that; and its election to not do it was properly submitted to the jury as some evidence of an intention not to stand upon the words of the contract about a surrender and a return of unearned premium.

We are mindful of the judgments in the Norris cases in 55 S. C. 450, 33 S. E. 566, and 57 S. C. 358, 35 S. E. 572.

All the words of that part of the contract under consideration here are not reported in these cases, and the Court's attention was not directed to the exact issue which is made in this case.

There is no other issue made by the motion which needs to be considered again.