12390

PLYLER, RECEIVER, v. UNITED STATES FIDELITY AND
GUARANTY COMPANY

(142 S. E., 45)

1. INSURANCE—CORPORATION'S SUIT ON FIDELITY BOND HELD PROPERLY
SUBMITTED TO JURY FOR DETERMINATION WHETHER ALLEGED VIOLA-
TIONS OF CONTRACT HAD BEEN WAIVED.—Where surety company
defended suit on fidelity bond on ground that corporation to whom
bond was given failed to examine accounts of Secretary-Treasurer,
for whose fraudulent acts it sought to recover, and failed to re-
quire countersigning of his checks or monthly accounting and al-
lowed him to retain custody of larger sums of money than was
agreed upon, case was properly submitted to jury to determine
whether alleged violations of policy had been waived.

2. INSURANCE—FAILURE TO EXAMINE SECRETARY-TREASURER'S CHECKS
AND ACCOUNTS, IF EXAMINATION WOULD NOT HAVE DISCLOSED
FRAUD, DID NOT PRECLUDE CORPORATION'S RECOVERY ON FIDELITY
BOND.—If corporation by examining accounts of Secretary-Treas-
urer, requiring the countersigning of his checks and keeping check
on him as required by its statement to surety company, could not
have ascertained Secretary-Treasurer's fraud, failure of corporation
to comply with requirements of its contract did not prevent re-
covery on fidelity bond.

Before DEVORE, J., Greenville, February, 1927. Af-
firmed.

Action by John L. Plyler, as receiver of the Industrial
Loan & Investment Corporation, against the United States
Fidelity & Guaranty Company. Judgment for plaintiff,
and defendant appeals.

The charge of the trial Court was as follows:

Mr. Foreman and gentlemen of the jury, the sum and
substance of the plaintiff's cause of action as set forth in
this complaint is as follows:

The plaintiff says that on the 1st day of January, 1924,
defendant, in order to protect and indemnify Industrial
Loan & Investment Corporation against loss or damage by
reason of the acts of F. G. Bunker, as secretary and treas-
urer of said corporation, executed and delivered to said

Industrial Loan & Investment Corporation its bond in the penal sum of $5,000 under and by the terms of which defendant bound itself to pay to Industrial Loan & Investment Corporation any pecuniary loss sustained by said corporation not exceeding $5,000 on money, securities, merchandise, or any property including that for which the employer is responsible occasioned by any acts of fraud, dishonesty, or any criminal act by the employee directly or through connivance while occupying the position of secretary and treasurer in the employer's employ during the period commencing January 1, 1924, and continuing until the termination of said bond. A copy of the form of said bond is hereto attached as part of this complaint, marked "Exhibit A." The said bond was issued in consideration of the payment to the defendant of the premium on said bond, and that said bond was renewed upon the same terms for the year 1925, and was of full force and effect at the time of the defaults and acts hereinafter alleged. That the said F. G. Bunker while in the employ of plaintiff, while acting as secretary and treasurer of said corporation, did on January 15, 1925, while the said bond was in full force and effect, willfully, fraudulently, dishonestly, and feloniously appropriate to its own use certain funds of Industrial Loan & Investment Corporation in the sum of $2,762.92 good and lawful money of the United States, being then the property of said corporation, with intent to appropriate the said money to its own use, and to cheat and defraud said Industrial Loan & Investment Corporation of the same. No part of said money has ever been paid to Industrial Loan & Investment Corporation or to plaintiff herein, although demand has been made upon defendant of the payment of same prior to the commencement of this action.

That by reason of the willful, fraudulent, dishonest, and felonious acts of the said F. G. Bunker, as secretary and treasurer of Industrial Loan & Investment Corporation as

above alleged, plaintiff has been damaged in the sum of
$2,762.92.

That plaintiff and Industrial Loan & Investment Corpora-
tion have fully performed all of the conditions of the con-
tract on their part, and by reason of the acts and defaults of
the said F. G. Bunker, as secretary and treasurer of Indus-
trial Loan & Investment Corporation, as hereinabove alleged,
the conditions of the bond hereinabove set forth have been
broken, and plaintiff is entitled to judgment against the de-
fendant for the breach of said bond for the sum of $2,-
762.92 and the plaintiff asks judgment at your hands in that
amount against the defendant.

The answer of the defendant denies the material allega-
tions of the complaint and sets up the following as a defense
as the reason why the plaintiff should not recover against
the defendant.

Defendant alleges that prior to the executions and de-
livery of the bond marked "Exhibit A" of the complaint,
the president of the Industrial Loan & Investment Corpora-
tion, obligee under said bond signed, executed and delivered
to defendant a certain instrument in writing designated as
an "Employer's Statement." That said statement was the
basis of the bond applied for, and the questions and answers
therein, by the terms thereof, were taken as conditions pre-
cedent to defendant's liability and plaintiff's recovery under
said bond. That the said employer's statement and bond
constituted the contract between defendant and the Indus-
trial Loan & Investment Corporation, and the plaintiff herein
is bound thereby. A copy of said employer's statement be-
ing annexed hereto and made a part of this answer, marked
"Exhibit A."

Defendant alleges, upon information and belief, that the
said Industrial Loan & Investment Corporation, its officers,
directors, and agents, obligee under the bond, did carelessly
and willfully neglect and fail to perform certain of the condi-

tions precedent as contracted and set forth in the said employer's statement, as follows:

(1) In failing to require that all checks issued by F. G. Bunker, as secretary and treasurer of the Industrial Loan & Investment Corporation, be countersigned by the president of said corporation.

(2) In failing to have the accounts of said F. G. Bunker examined at the intervals provided.

(3) In allowing the said F. G. Bunker to retain custody of larger sums of money than provided in said statement.

(4) In failing to instruct and demand of the banking institutions with which said corporation did business that no checks without the countersignature of the president should be honored.

(5) In failing to demand an accounting from the said F. G. Bunker to the board of directors each month of his handling of funds, stocks, and other securities and assets.

That the said Industrial Loan & Investment Corporation by its careless neglect and willful failure to carry out, as aforesaid, the terms and conditions of the contract entered into by it with this defendant, which conditions were conditions precedent, has breached the conditions of the bond and contract and released this defendant from any and all liability thereunder, and this defendant is not therefore liable to plaintiff herein in any manner or sum whatever.

That is about the sum and substance of the issues raised by the complaint and answer, and to make it plainer and more simple for your consideration, this is a suit to recover 2,700-odd dollars as set forth in this complaint on account of the conduct of Bunker as an employee of this company. And in order to secure any loss on account of Bunker the company entered into a bond, it may be called an indemnity bond, against any fraudulent conduct or dishonesty that Bunker may have been guilty of and against the company, and they allege that he was guilty of such conduct that makes

the bond liable for him against the company, an employee of the company as secretary and treasurer.

The defendant says that the company failed to do what they promised to do in the statement that they signed in connection with that bond which became a part of the contract between the parties.

Now, I differ a little with the lawyers on both sides of this case. Suppose the company did fail to do any or all of the acts which they agreed to do under this statement as set forth here in the defendant's defense; suppose they failed to do that. Would it necessarily follow that the plaintiff could not recover? I do not think so. Or suppose the company had done everything that they agreed to do in that statement, would it have been possible under those circumstances for them to ascertain the misconduct and fraud practiced by the secretary in the management and conduct of his business towards that company? If the company had done all those things that they promised to do and it would have been impossible for them to have found out any misconduct or fraud or deception practiced by the secretary, Bunker, on this company; suppose they could not have found it out, suppose it would have been impossible for them to have found it out, but whether they could have found it out or not is a question for you to find out from this evidence. To put a plain cause to you: Suppose a man was suing the railroad company for not blowing the whistle and he was where it would have done no good to have blown the whistle, so the blowing of the whistle would not have done any good. Now, suppose these parties, the plaintiff company had done all those things that they promised to do in this statement that is set forth in this defense, suppose they had done all those things, and yet it would have been impossible for them to have found out the shortcomings of the secretary; what good would it have done if they could not have known? Now, whether they could have found it out or not is a

question for you to find out from this evidence. If they could have found it out and that caused injury and damage to the defendant, why that would be a good defense to this cause of action. But if they could not have found it out even if they had undertaken to find it out and it would have been impossible to find it out, it would not have done any good to have done it, and that being so, if that is so, then it would be liable for the amount sued for under that bond in this case.

That's about all I care to say to you in my general charge. Whatever else I shall say to you will be in connection with these requests that have been sent up here.

I have been requested to charge you on behalf of the plaintiff as follows:

(1) "It is well settled that the rule of *strictissimi juris*, ordinarily applied in relief of an individual surety, is not applied in case of compensated sureties, and where a bonding company for a monetary consideration has insured against failure of performance of a contract, it must show that it has suffered some injury by reason of departure from the strict terms of the contract, before it can for that reason be discharged from its liability."

I charge you that.

(2) "I charge you that even if the defendant in this case has shown departure from the contract between it and the Industrial Loan & Investment Corporation, that alone will not discharge it from liability under its contract. It must show that it has suffered some injury or loss by reason of such departure from the contract, and if the defendant has failed to show by the preponderance of the evidence that it has suffered loss or injury by reason of any departure from the contract, then I charge you that if you find that there has been a breach of the bond, your verdict must be for the plaintiff."

I charge you that.

(3) "I charge you as a matter of law that while, under certain circumstances, a surety company would have the right to declare a forfeiture of the policy for a breach of the conditions thereof, yet such right may be waived by the surety company, and it is for the jury to say under all the testimony in this case whether or not the defendant has waived the right to declare a forfeiture. I charge you that the defendant has admitted the execution of the bond sued on, and if you believe from the evidence that the plaintiff has sustained loss by reason of the acts of F. G. Bunker, amounting to fraud, dishonesty, or a criminal act while occupying the position of secretary and treasurer of the Industrial Loan & Investment Corporation, that then the plaintiff is entitled to recover a verdict for the amount of the loss which it has shown it has sustained not exceeding the amount sued for in the complaint, unless the defendant has shown by the preponderance of the testimony that there have been departures from the contract which has caused such loss or injury; and even if defendant has shown such loss or injury, the plaintiff would still have the right to recover if the defendant, having the right to declare a forfeiture, has waived such right."

I charge you that, and in that connection I charge you also, gentlemen, if Bunker's conduct was such in the management of the affairs of this company as secretary and treasurer and if the keeping of the records was done in such a way as to prefer a fraud on the company by deception, and that could not be ascertained by the examination of the records and be able to carry out the promises that the president made in this statement, why that would not relieve this company from any liability under that bond, and the terms of that bond cover any act on his part in the conduct of his records that is calculated to deceive and defraud the company. That bond covers that kind of fraud and misconduct, and if he did it in such a way that the company

could not find it out, if they could not find it out by doing those very things, it would have been useless for them to have undertaken it because they could not have found it out, why then the company would be liable.  Now, whether he acted in such a way as to conceal it and to carry out the instructions and agreement they entered into in this statement— I say if that was concealed in such a way that they could not find it out, it would not have done any good; they could not find it out.  Whether that be so or not I do not know.  You must find it out from the evidence.  If they could have found it out and failed to find it out and that is the reason they did not carry it out, I do not think the company would be liable under this bond.

I have been requested on behalf of the defendant to charge you five requests, all of which I refuse.  I cannot charge these requests as they are written,, but the sixth request, which is as follows, I do charge you:

"The plaintiff, John L. Plyler, as receiver, stands in the same shoes as the officers, directors, and stockholders of the Industrial Loan & Investment Corporation, and notice to the latter is imputed to him and he is bound thereby."

I charge you that.

That's about the law as I see it that covers this case, except to say to you that the plaintiff must prove its case by the greater weight or preponderance of the evidence; that is to say in support of the plaintiff's cause of action his evidence must be heavier, outweigh and preponderate over that evidence that is opposed to it.  If that be so, the plaintiff would be entitled to recover, otherwise the plaintiff could not recover.

If you conclude that the plaintiff is entitled to recover, you say, "we find for the plaintiff" whatever amount you conclude plaintiff is entitled to recover, "the sum of so many dollars," writing it out in words and not in figures.

If you conclude that the defendant is entitled to recover, say, "we find for the defendant," and sign your name as Foreman.

Mr. Stover: I would like to ask your Honor to charge on one or two other points. I would like to request that it is no excuse for the president to say that he simply countersigned all checks that he knew about when he could by reasonable diligence have found out that others were being issued without his countersignature; he is presumed to have had notice.

Mr. Blythe: That would be charging on the facts.

The Court: Well, I charge you that, gentlemen, provided you believe that his failure to do that was prejudicial to the defendant to cause him damage.

Mr. Stover: And along the same line, "I charge you that it was the president's duty to take whatever steps that might have been necessary to prevent the issuance and honoring of checks without his countersignature."

The Court: I charge you that, provided he would have been able to discover the fraud and deception, if there was any such, practiced by the secretary and treasurer.

Mr. Stover: The Court did not consider the question of notice. The notice came under the terms of the bond itself; the other defenses were under the statement.

The Court: I charge you this, as soon as they found out the fraud it was their duty to serve notice in 10 days after they found it out; but when did they find out? It is a question for you to answer. And did they serve this company in 10 days after they found it out? If they did, they complied with the law in this case.

*Messrs. Dakyns B. Stover* and *Nettles & Oxner,* for appellant, cite: *Failure to give notice of loss as required in bond, and failure to adhere to conditions specified therein bars recovery on same:* 80 S. C., 151; 233 Pac., 731; 2 Fed. (2nd), 214; 148 Fed., 206; 205 S. W., 128; 100 Atl., 572;

10 L. R. A. (N. S.), 323; 74 S. W., 1111; 77 So., 642; 175 S. W., 322; 97 N. W., 836; 163 Pac., 592; 94 Atl., 859; 99 Fed., 242; 103 Fed., 427; 100 N. E., 882; 2 Fed. (2nd), 793; 5 Fed. (2nd), 305; 256 Fed., 601; 4 A. L. R., 558; 206 S. W., 892. *"Waiver":* 124 S. C., 169, 178. *Burden of proving same on insured:* 107 S. C., 193; 83 S. C., 262. *Doctrine of estoppel based on strong equitable consideration:* 102 S. C., 116; 130 S. C., 383, 387. *"Evidence of waiver":* 70 S. C., 75; 68 S. C., 387; 55 S. C., 450; 57 S. C., 358; 104 S. C., 403; 107 S. C., 393; 102 S. C., 315; 133 S. C., 472; 124 S. C., 73.

*Mr. E. M. Blythe,* for respondent, cites: *Agent authorized to solicit insurance may waive forfeiture of policy:* 97 S. C., 375; 134 S. C., 532. *Forfeitures not favored:* 102 S. C., 115; 115 S. C., 53; 13 Fed. (2nd), 758; 104 S. C., 167. *"Waiver":* 57 S. C., 358; 70 S. C., 75; 94 S. C., 299; 97 S. C., 375; 102 S. C., 115, 104 S. C., 403; 107 S. C., 393. *Cases distinguished:* 133 S. C., 472.

March 5, 1928.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This action was commenced by service of summons and complaint on July 14, 1926. The action is by the receiver of Industrial Loan & Investment Corporation against the defendant on a fidelity bond issued by defendant to said investment corporation to indemnify it against loss occasioned by any fraudulent, dishonest, or criminal act or acts of F. G. Bunker as secretary and treasurer of the corporation. The plaintiff claims that on January 15, 1925, while the bond was in effect, Bunker appropriated to his own uses $2,762.92 out of the funds of the corporation and that defendant is liable for said sum on said bond. The defendant interposed three defenses. One was a general denial; and another, that under the terms of the bond defendant was entitled to be notified

of loss within 10 days after discovery, and that such notice had not been given. The third defense was that as a part of the contract under which the bond was issued the corporation had agreed to do certain things which were by the contract made conditions precedent to any recovery on the bond, and that these acts and things had not been done. Under this defense the defendant claimed that the corporation had breached its agreement: (a) By failing to require that all checks issued by Bunker on behalf of the corporation should be countersigned by the president; (b) by failing to have the accounts of Bunker examined as specified at intervals; (c) by allowing him to retain custody of larger sums of money than was agreed upon; (d) by failing to instruct the banks with which the corporation did business not to honor checks signed by Bunker except when countersigned by the president; and (e) by the failure of the board of directors to require a monthly accounting from Bunker as to his handling of the funds, stocks, and other securities and assets of the corporation.

The case was tried before Judge De Vore and a jury at Greenville, S. C., on February 14, 1927. At the close of plaintiff's testimony defendant moved for a nonsuit upon grounds hereinafter set forth, and the motion was refused. A similar motion was made for a directed verdict at the conclusion of all the testimony, which likewise was refused. The jury returned a verdict in favor of the plaintiff for the sum of $2,762.92. A motion for a new trial was noted upon the minutes, but, on account of the illness of the presiding Judge, was not argued. The case is here on alleged error in refusing to grant the motion for a directed verdict and for alleged errors in the charge.

The exceptions, 19 in number, challenge the alleged errors of his Honor in not directing a verdict for the defendant, in charging plaintiff's request, in refusing to charge certain requests of the defendant, errors in the Judge's charge to the jury, and in settling the case for appeal.

The exceptions to his Honor settling the case for appeal are overruled as being without merit.

The exceptions as to directing a verdict are overruled under the cases of *Powell v. Insurance Co.,* 97 S. C., 375; 81 S. E., 654; *Scott v. Insurance Co.,* 102 S. C., 115; 86 S. E., 484; *Ward v. Insurance Co.,* 115 S. C., 53; 104 S. E., 316; *Cope v. Insurance Co.,* 134 S. C., 532; 133 S. E., 440; *State Agricultural and Mechanical Society v. Taylor,* 104 S. C., 167; 88 S. E., 372; *Norris v. Insurance Co.,* 57 S. C., 358; 35 S. E., 572; *Pearlstine v. Insurance Co.,* 70 S. C., 75; 49 S. E., 4 and *Rawl v. Insurance Co.,* 94 S. C., 299; 77 S. E., 1013; 45 L. R. A. (N. S.), 463, Ann. Cas., 1915–A, 1231.

An examination of the Judge's charge as a whole will show that the principle of law as stated by him was correct and pertinent to the issues as made by the pleadings and evidence, and we see no error as complained of.

All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN did not participate.