### SASSE v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA. (No. 7562.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. INSURANCE ☞634—ACTION ON POLICY—PLEADING—WAIVER OF CONDITIONS.

In an action upon a certificate of accident insurance, providing that written notice of any accident should be sent to the secretary within 10 days, stating the member's name and address, the particulars of the accident, etc., that on death from accidental injury notice of the accident should be given, and that written notice of the death should be given to the secretary within 10 days after death, and that failure to furnish proofs of death within 30 days should be a waiver of all claims, and that an autopsy, not requested by the insurer, held without reasonable notice to it, should avoid the certificate, a complaint alleging due compliance with all the provisions as to notice, proofs, etc., except that plaintiff did not give notice of the accident, or notice of death, or furnish proofs of death, and had permitted an autopsy without notice, but that the defendant had duly waived such provisions and requirements with respect to notices, proofs, etc., was fatally defective for failure to plead the facts claimed to constitute a waiver, so that the insurer, upon objection duly made, was entitled to a dismissal.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1593, 1596, 1598, 1603–1606, 1608; Dec. Dig. ☞634.]

2. INSURANCE ☞665—ACCIDENT INSURANCE—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action upon a certificate of accident insurance for death from an alleged accident, verdict for plaintiff *held* against the weight of the evidence.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞665.]

3. INSURANCE ☞146—CONTRACT—CONSTRUCTION.

Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and proper sense.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. ☞146.]

Appeal from Trial Term, New York County.

Action by Edith L. Sasse against the Order of United Commercial Travelers of America. From a judgment entered upon a verdict for $5,000, and an order denying a new trial, defendant appeals. Judgment and order reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Harry B. Bradbury, of New York City, for appellant.

Eidlitz & Hulse, of New York City (Frederick Hulse, of New York City, of counsel), for respondent.

CLARKE, J. This action is to recover from defendant, a foreign fraternal insurance corporation duly authorized to do business in this state, the amount payable under its constitution and by-laws for the death of plaintiff's decedent, claimed to have been caused solely by an accident. It was conceded that the decedent at the time of his death

was a member in good standing in the order.  The constitution pro-
vides that:

If any member of the order in good standing shall sustain "bodily injury
effected through external, violent, and accidental means, which alone and
independent of all other causes shall occasion death immediately or within six
months from the happening thereof, the order within ninety days after receipt
of satisfactory proof of said accidental death, on blanks furnished by the
order, shall pay to the person or persons entitled thereto the sum of $5,000,
and shall also pay to the person or persons entitled thereto $1,300 in weekly
installments of $25 each, the first of such weekly installments to be paid with-
in ninety days from the receipt of such proof of death. * * *  Provided,
further, that payments authorized under the provisions of this section shall
not cover or extend to * * * any death, disability or loss resulting from
or in consequence of lumbago, appendicitis, bodily infirmity, or deformity,
mental infirmity, fainting spells, fits, epilepsy or vertigo ; nor as a result of or
in consequence of any infection (unless the infection is introduced into, by
and through an open wound, which open wound must be caused by external,
violent or accidental means) ; * * * nor to any death, disability or loss
which results from or in consequence of any disease ; nor to any death, dis-
ability or loss caused wholly or in part by bodily infirmity or disease ; nor
to any death, disability or loss unless caused by bodily injury which is exter-
nal, accidental and is the proximate, sole and only cause of death, disability
or loss.

"In the event of any accidental injury on account of which a liability may
arise against the order, notice of the accident (not the results) must be sent
in writing to the Supreme Secretary within ten days after the accident,
stating the full name and address of the injured member, the nature, date,
extent and full particulars of his accident and injury, and the name and ad-
dress of his medical attendant.

"In event of any accidental injury on account of which a death claim may
be filed against the order, notice of the accident (not the results) must be
given in writing to the Supreme Secretary within ten days after the accident,
stating the full name and address of the injured member, date and full par-
ticulars of the accident and the name and address of his medical attendant.

"In event of a death resulting from external, violent and accidental means,
as hereinbefore provided, notice of the accident must be given as herein-
before provided, and, in addition, notice of the death must be given in writ-
ing to the Supreme Secretary within ten days after the death.

"In the event of a death claim being filed against the order, a certified
copy of the coroner's inquest, if one has been held, must be furnished, the order
if required by the Supreme Secretary.

"Failure to give any notice, together with full particulars, as hereinbefore
required, shall be deemed a waiver of all claims against the order and shall
invalidate the same. * * *

"Failure to furnish to the Supreme Secretary of the order, within thirty
days from the date of such accidental death, on blanks furnished by the or-
der, direct and affirmative proof of such accidental death shall be deemed a
waiver of all claims against the order, and shall invalidate the same.

"Upon receipt of notice of accidental injury, death or loss, the Supreme
Secretary shall, within a reasonable time, forward or present blanks for
proof of same to the claimant, beneficiary or attending physician, as deemed
advisable. * * *

"The forwarding of blanks by the Supreme Secretary as above provided,
or the investigation of any claim by a member of the order, or any one au-
thorized to represent the order, or the holding of an autopsy by any one
representing the order, shall not constitute or be a waiver of any right or
of any defense which the order may have against any claim made against it,
but all labor, inconvenience and expense which a claimant, under the provi-
sions of section 5 of this article, may, in any case, incur in making proof
of any claim, shall be at such claimant's risk. * * *

"In case of his death, the Supreme Executive Committee may have the re-
mains examined, or may have an autopsy made, or may have removed any

specimen or specimens for any examination desired. * * * In case an autopsy is requested by the Supreme Executive Committee, or any examination of the remains of a deceased member of the order and permission is not given within five days from the date of such request, such failure shall be construed to be a refusal thereof. Every claim under section 5 of this article shall be invalidated and rendered null and void, should any of the foregoing be denied the order. * * *

"Every claim for death alleged to have been caused by accident shall likewise be invalidated and rendered null and void, should an autopsy, not requested by the order, be held without reasonable notice thereof being first given to the Supreme Secretary that the order may be represented thereat."

The complaint alleges that on or about the 10th day of August, 1912, the said Andreas A. Sasse received bodily injuries effected through external, violent, and accidental means, which said injuries alone and independent of all other causes occasioned the death of the said Andreas A. Sasse within six months from the happening of the said accident, to wit, on the 21st day of August, 1912; that plaintiff has duly complied with all of the provisions of the said constitution and by-laws of the defendant with respect to the giving of due notice and proof of said accident and death, except that plaintiff did not give notice in writing of the said accident to the said Andreas A. Sasse to the Supreme Secretary of the defendant within 10 days after the accident, and did not give notice of the death of the said Andreas A. Sasse to the said Supreme Secretary of the defendant within 10 days after the said death, and except, further, that the plaintiff did not furnish to the said Supreme Secretary proofs of the said death of the said Andreas A. Sasse within 30 days from the date of his death; but that plaintiff on or about the 9th day of September, 1912, duly notified in writing the Supreme Secretary of the defendant of the said accident and death, and on or about the 19th day of December, 1912, duly furnished written proofs of the said death to the Supreme Secretary of the defendant, and that plaintiff has duly performed all the conditions on her part to be performed and has otherwise duly complied with the provisions of the said constitution, except that on or about the 22d day of August, 1912, she permitted an autopsy to be held upon the body of said Andreas A. Sasse without first giving the Supreme Secretary of the defendant notice thereof, and that the defendant has duly waived the said provisions and requirements of the said constitution and by-laws with respect to the giving of notice and proofs of the said accident and death and the holding of an autopsy without notice, and that in all other respects plaintiff has duly complied with all the terms and conditions of the said constitution and by-laws in order to entitle her to the payment of the benefits as aforesaid.

The answer for a separate defense alleges a failure to comply with the provisions of the constitution and by-laws as to the sending of the prescribed notices and the holding of an autopsy, and that by reason thereof any claim under the certificate of membership became and is invalidated and rendered null and void and of no effect. It also alleges for a further separate defense that the death was caused by bodily infirmity, fainting spells, vertigo, and wholly or in part by bodily infirmity or disease, and that the death was not caused by bodily injury which was external, accidental, and the proximate and sole and only cause of his death.

At the beginning of the trial the defendant moved to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and directed the court's attention especially to paragraph 6, in which the plaintiff sets up affirmatively that she has failed to comply with the certificate under which she sues under four different particulars, enumerating them, and states "that the defendant has duly waived said provisions and requirements of the said constitution and by-laws," which is the only allegation of waiver, and claimed that in a complaint which depends upon a waiver they must allege the facts which constitute the waiver. This motion was denied and exception taken. The defendant objected, on its introduction, to the admission of any testimony in relation to waiver on the ground that it was not pleaded, and excepted to the overruling of the objection.

At the end of the plaintiff's case the defendant moved to dismiss on the following ground, among others:

Sufficient facts have not been stated to constitute a cause of action.

Sixth. There has been a violation of the contract of insurance on the part of the plaintiff

—setting up the four defects in sending of the notices and in the holding of the autopsy without notice, and excepted to the denial.

Defendant moved at the end of the entire case to dismiss the complaint on the ground, among others, that there was no pleading or proof of waiver, and excepted to the denial. The defendant excepted to the charge of the trial court as to the manner in which the waiver could be made in this particular case. It also excepted to the charge that waiver need not be based upon a new agreement or estoppel. It also excepted to the refusal to charge requests 3, 4, 5, 6, 7, 8, 9, and 10, based upon the proposition that what the defendant did in investigation and receiving the notices after the time prescribed did not constitute waiver, because of its express reservation of its rights under the constitution and by-laws.

The respondent claims that there was ample evidence to sustain a finding by the jury that defendant waived the furnishing of the notice of the accident within 10 days, of notice of death within 10 days, of proof of death within 30 days, and of notice of the holding of the first autopsy. The appellant shows: That the constitution provides that the forwarding of blanks by its Supreme Secretary or the investigation of any claim by a member of the order, or any one authorized to represent the order, or the holding of an autopsy by any one representing the order, shall not constitute or be a waiver of any right or of any defense which the order may have against any claim made against it. That Defendant's Exhibit 2 was a request in writing for an autopsy and contained the following provision:

"In making this request, the Order of United Commercial Travelers of America does not waive any rights or defenses under its constitution, but expressly reserves the same."

That in the consent to this autopsy plaintiff states:

"I hereby grant the above request and agree that the order above named does not waive any provision of its constitution in asking for and in making the post mortem [autopsy] examination, above requested, or in making an

154 N.Y.S.—36

examination of any specimen or specimens chemically, microscopically or in any other manner, and I further agree that the above-named order does not waive any provisions of its constitution in making any investigation desired; neither does the above-named order waive any right or any provision of its constitution by presenting any blanks for making proofs of death."

In forwarding the blanks the defendant especially reserved this right, stating in the letter which plaintiff put in evidence:

"We are complying with your request by inclosing blanks herewith. We are sending these solely and entirely at your request, and, in doing so, all of the order's constitutional rights are reserved. You will note on the margin of the proofs that an officer of the order has attached a signed statement reserving the order's rights in sending the blanks."

The blanks which were forwarded contained the following:

"In sending this blank this order does not waive any provision of the constitution, but expressly reserves the same."

Exactly the same indorsement was contained on Plaintiff's Exhibits P and Q. In the letter to plaintiff's attorneys December 4, 1912, the defendant again wrote:

"We are not waiving any rights or defenses in answering your communication. We are simply writing as a matter of courtesy."

When the proofs alleged in the complaint to have been furnished on or about December 19, 1912, were received from plaintiff's attorneys, defendant wrote December 20, 1912:

"We are retaining these papers for consideration, without waiving any of our rights or defenses under our constitution which we may have in this matter. As soon as the papers have had the proper consideration we will advise you as to our action on the claim. If the action of the order should be to reject the claim, kindly advise whether or not you would desire to have the papers herewith acknowledged returned to you."

The defendant rejected the claim in writing on January 13, 1913, on the following grounds:

First, the notice of the alleged accident was not received within the time provided for by the constitution. The notice of death was not received within the time provided. An autopsy on the body not requested by the order was held without any notice to the Supreme Secretary of the order. The final proofs of the alleged accident and death were not received within the period provided by the constitution. The death of Mr. Sasse was not one which is covered by the constitution. "The proofs and papers which you have furnished us in this matter are being retained under the statement of your Mr. French that it is not necessary to return them to you."

[1] On the question of pleading: In Todd v. Union Casualty & Surety Co., 70 App. Div. 52, 74 N. Y. Supp. 1062, this court, Mr. Justice McLaughlin writing, sustained a demurrer to the complaint, under a contract of insurance against liability for injuries from accidents, on the ground that it did not state facts sufficient to constitute a cause of action; the court saying:

"The complaint is also fatally defective in another respect. The plaintiff does not allege performance of the conditions of the policy on his part, nor does he set forth any facts showing a waiver of any of those conditions. The only allegation in the complaint, with reference to the performance of the conditions upon which defendant's liability depended, is: 'X. That plaintiff duly complied with and observed all the provisions of the said contract of

insurance by him to be complied with and observed as conditions precedent to defendant's liability to him thereunder, except in so far as such compliance and observance were waived or rendered unnecessary by the position and action of this defendant.' To entitle the plaintiff to recover he must show that he has performed all of the conditions of the policy on his part to be performed, or that performance has been waived, and this he does not do by alleging that he has complied with the policy in that respect, except where the same has been waived. If he has performed, then that fact must be alleged without qualification. If he has not performed, for the reason that defendant waived performance, then the conditions waived and the facts and circumstances constituting such waiver must be alleged [citing cases]."

In Pope Manufacturing Co. v. Rubber Goods Mfg. Co., 110 App. Div. 341, 97 N. Y. Supp. 73, upon demurrer this court said:

"The plaintiff claims that 'the allegation that the defendant had knowledge of and fully assented to the manner of performance * * * is an allegation sufficiently broad to enable the pleader to prove a waiver.' This is not sound. Mere knowledge and assent do not constitute a defense. There must be a formal release, sufficient consideration, or such conduct upon the part of the assenting person as will have created a condition to the detriment of the other party. The facts to sustain this conclusion should have been alleged [quoting from the Todd Case, supra]. It is not to be denied that the cause of action set up in this counterclaim might be destroyed by showing a release under seal, a waiver for consideration, or estoppel by conduct. The facts, however, not being pleaded to establish any such defense, the demurrer is well taken."

Mr. Justice Scott, writing for the Appellate Term in Glazier v. Home Insurance Co., 48 Misc. Rep. 515, 96 N. Y. Supp. 136, said:

"It is argued that the plaintiff has not pleaded a waiver of the condition of the policy with which it is conceded he did not comply. It is well settled that, in suing upon a policy of insurance, the plaintiff must either allege that he has complied with all the conditions of the policy, or, if he desires to plead a waiver by the company of any condition with which he has not complied, he must allege the condition claimed to have been waived and the facts and circumstances constituting such a waiver. It is not sufficient to allege, generally, that a particular condition has been waived; but such facts must be stated as will, if taken to be true, be sufficient to establish the waiver [citing Todd Case, supra]. * * * In his complaint he seeks to plead a waiver of this condition as follows: 'That the plaintiff duly fulfilled all the conditions of said agreement on his part, and more than 60 days before the commencement of this action, to wit, on or before the 2d of October, 1903, served on the defendant, as the proof of loss, a complete inventory of the property destroyed and injured, with the quantity and cost of each article and the amount claimed thereon, and the same has been retained by the defendant without objection, and that the defendant has required no further or other proofs of loss to be furnished.' It is apparent that the only fact alleged to establish a waiver is that the defendant retained the inventory without objection and has required no further or other proofs of loss to be furnished; and it is argued that this fact alone, taking it to be true, does not establish a waiver, and consequently that no waiver has been properly pleaded. This contention seems to be well founded. Mere silence or inaction on the part of an insurance company cannot be taken as a waiver of a condition requiring formal proofs of loss to be sustained, and in neither of the previous decisions in this court in this case has it been held to be sufficient. * * * In order, therefore, to successfully plead the waiver of the condition as to furnishing proofs of loss, it was incumbent upon the plaintiff to plead, not only the silence of the company as to the insufficiency of the paper which was served, but also some other fact which, coupled with the silence, would have justified a finding of waiver. This he failed to do, and consequently he failed to sufficiently plead the waiver."

This case and the Pope Mfg. Co. Case, supra, were cited in Frey v. N. Y. C. & H. R. R. R. Co., 114 App. Div. 747, 100 N. Y. Supp. 225.

In Whiteside v. North American Accident Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696, a judgment of the Appellate Division, reversing a judgment for defendant entered upon the dismissal of the complaint, and directing judgment for plaintiff for the amount demanded, was reversed, and the judgment of dismissal of the Trial Term affirmed. The action was brought on a policy of insurance which contained a provision:

"That written notice from the insured or his representative, stating the time, place and nature of injury, or death, or commencement of sickness, must be mailed to the secretary of the company at its home office * * * within ten days after the date of such injury, death or commencement of such sickness, as conditions precedent to recovery."

The complaint alleged that plaintiff on November 13, 1904, and thereafter, was sick for the period of a month, and "alleges that during the early part of his sickness he was delirious and unable to remember that he had said policy of insurance, and had wholly forgotten the fact until about the 10th day of December, 1904, when he caused notice to be sent to the defendant of such sickness," and the defendant repudiated liability because of failure to serve notice of sickness in accordance with the terms of said policy. The defendant answered, but by stipulation this answer was withdrawn, and the case submitted on the facts stated in the complaint as upon application for judgment. Judge Hiscock said:

"Therefore the query practically is whether the complaint sets forth a cause of action, in view of the facts appearing therein concerning the failure * * * to serve or cause to be served the notice which has been mentioned. There is no dispute that the insurer might and did make it a substantial provision of its contract of insurance and a condition precedent to recovery that it should within a specified time be notified of any sickness of the insured for which he expected to make a claim under his policy. This was a condition which was not only lawful, but which we can readily see was only a reasonable and suitable protection to the company against fraudulent claims."

After alluding to the cases against municipal corporations for negligence, where a notice is required, and where it has been held that physical and mental disability may operate as an excuse for failure to act within the time, he went on to say:

"It is to be observed, however, that in these cases the court was dealing with an exaction and burden placed on a claimant without his consent by statute. That is not this case. Here the parties by their free and voluntary action have entered into a contract by which each has assumed certain obligations. * * * All of these provisions and engagements enter into the substance of the contract which respondent is seeking to enforce, and under such circumstances the courts will not relieve either party under the conditions here presented from fulfillment of the engagement which he has voluntarily undertaken. This distinction between obligations imposed on a party by statute and against his will, and those voluntarily assumed by him as a part of a contract, is clearly recognized by the decisions"

—citing Wheeler v. Conn. Mut. Life Ins. Co., 82 N. Y. 543, 37 Am. Rep. 594, a case of insanity, and Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662, and Kerr on Insurance, and held that the plain-

tiff must be held to the times of the contract which he had voluntarily made.

In Meech v. National Accident Society, 50 App. Div. 144, 63 N. Y. Supp. 1008, an accident occurred on the 27th of June. The policy required that a notice should be given 10 days from the date of the injury and within 30 days after the termination of total disability and that a failure to give such notices invalidated any claims. The complaint alleged merely that written notice of the injury was forwarded to the company and also due and proper proof of such injury. The answer put in issue the material allegations of the complaint and alleged failure to comply with the conditions concerning notice and proofs of injury. Defendant's counsel moved to dismiss the complaint at the commencement of the trial. A letter from the defendant's secretary and general manager to the plaintiff, dated August 3, 1897, was introduced in evidence in which it was stated that the notice was received on July 23d, and that it was not a compliance with the conditions of the policy in regard to notice of injury, and attention was called to the provision by which failure to give such notice within 10 days invalidated such claim. This letter concluded as follows:

"Without waiving any of our rights, we inclose herewith the regular form of claim blank. When received, duly executed, the same, with other papers, will be placed in the hands of our auditing committee. I cannot, however, at this time inform you what their decision will be."

The evidence showed that the claim blank was filled out, dated August 5th, and returned to the company, and produced by its attorney on the trial. The plaintiff testified that he sent several proofs of loss to the company, and they were not returned to him, and that in August a doctor examined him for the company. At the close of the plaintiff's case defendant's counsel again moved to dismiss the complaint on the ground before stated. The motion was denied, and an exception taken. The court, Mr. Justice Laughlin writing, said:

"The sufficiency of the complaint and of the evidence presented and the right to recover on the theory of waiver without alleging waiver are pointedly raised by the exceptions. If plaintiff could recover on the theory of waiver without laying the foundation therefor in his pleading, it is doubtful whether the evidence of waiver was sufficient. * * * The provisions of the policy should be reasonably, not rigidly, construed, and the insurer should not be relieved of liability upon technical grounds. Solomon v. Continental Fire Ins. Co., 160 N. Y. 595 [55 N. E. 279, 46 L. R. A. 682, 73 Am. St. Rep. 707]; Trippe v. P. F. Society, 140 N. Y. 23 [35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529]. But in the absence of express waiver of the performance of conditions precedent some element of estoppel must exist. It must be affirmatively shown by the insured that he has been misled to his prejudice by some act of the insurer, or that the latter, after knowledge of the facts constituting the forfeiture, has done or required something, or exercised a right which could only be done, exercised, or required by virtue of the policy. Such estoppel or waiver cannot be inferred from mere silence on the part of the insurance company, nor from its suggesting the forwarding of proofs of loss or corrections therein, expressly reserving its right to declare the forfeiture. Gibson El. Co. v. Liverpool & London & Globe Ins. Co., 159 N. Y. 418 [54 N. E. 23]; Lamb v. Prudential Ins. Co., 22 App. Div. 552 [48 N. Y. Supp. 123]; Armstrong v. A. Ins. Co., 130 N. Y. 560 [29 N. E. 991]. Where notice has been given and proofs of claim or loss furnished within the time required by the policy, and

they have been retained by the company without objection, the plaintiff may, it seems, notwithstanding defects or informalities therein, recover on an allegation of performance. Giving notice of the accident and furnishing proofs of the extent of the injury, however, within the time specified in the contract, are conditions precedent to a right to indemnity under the policy; and it is incumbent on the plaintiff to allege and prove compliance in this regard if he expects to recover on the theory of performance, or to allege and prove facts showing absolute denial of liability or other waiver or estoppel, or sufficient excuse to authorize a recovery notwithstanding his noncompliance. This is a general rule of pleading, and we see no reason for not applying it, to the extent here considered, in actions on insurance policies, as well as in other cases [citing a number of authorities]."

It seems to me, under these authorities, that the complaint was fatally defective for failure to plead the facts claimed to constitute waiver, that this point was taken promptly at the opening of the case and persistently insisted upon to its close, and that defendant was entitled to a dismissal.

[2] On the merits, I think the verdict is against the weight of evidence. In regard to the accident: The plaintiff's decedent was going down a temporary wooden stairway at the Grand Central Station about half past 8 on the morning of August 10, 1912, accompanied by his little daughter, who at that time was 12 years of age and at the time of the trial 15. This stairway consisted of 17 steps to a broad landing and then continued 6 steps further. There was an iron railing on each side and in the center. The question is whether he tripped and fell, or whether he fainted and sank down. The little girl testified that there was an iron plating on the top of each step—little ridges. This was thoroughly disproved by the testimony of three witnesses and by the photograph in evidence. The steps were plain wood. She testified, on direct examination, that "a little ways from the top, say about two or three steps, papa tripped and fell down." He was lying on the stairs. His feet were a step or two from the landing; his head was two or three steps from the top. Under cross-examination she said that in walking down she was a step ahead of him; that she did not see him fall; that when he fell he did not pass her; that she kept going down, and was far enough down so that he was above her, and that he was behind her all the time; that when the porter came in a few seconds her father was sitting on the steps in the middle between the top and the landing—he was four or five steps from the landing. She had signed two previous statements, one written by one of plaintiff's attorneys, in which she said:

"We were walking down a flight of stairs, * * * when he tripped on the stairs and fell on his left side and back on the first landing below."

The other paper was an affidavit in her own handwriting:

"We were walking down the stairs to the track my train was to start from, and my father tripped on the stairs and fell downstairs to the first landing."

She testified that these written statements, made shortly after the accident, were untrue. She testified that a porter came from upstairs somewhere in a few seconds and picked her father up; that when the porter came he was sitting on the steps in the middle between the top and the landing. The porter testified that when he got there her

father was lying on the second landing of the stairs, on the level part of the stairs, and she was bending over him at the time, She was asked on cross-examination:

"Q. When the colored porter came to you in the first instance, didn't he say in words or effect to you, 'What is the matter?' and didn't you answer to him in words very closely proximating, 'My father has fainted.' A. I don't remember saying that. Q. Would you state positively that you did not say it? A. Well, as I remember it now, I don't think I thought papa had fainted, because he did not look that way to me. Q. My question is whether the porter didn't say to you in words or effect, 'What is the matter?' and you said to him in words or effect, 'My father hâs fainted.' A. I don't remember that at all. Q. Would you say positively that you didn't say that to the porter? A. No; I wouldn't say so, because I was excited; I don't suppose I knew what I was saying."

The porter testified that when she was bending over her father when he was lying on the landing he asked her what was the matter, and that she said, "Father has fainted." After the close of defendant's case the little girl was recalled in rebuttal and denied that conversation. On cross-examination, having testified positively that she had not said a word about the matter to any one, or to her mother, or to her mother's attorney, she admitted that both the attorney and her mother had asked her the same question.

The porter, with the assistance of another gentleman, picked Mr. Sasse up and helped him to the top of the stairs, put him in a wheel chair, and rolled him to the emergency hospital, where he put him in charge of Mr. McLaughlin, chief clerk of the station master's office, and then put the little girl on the train as requested by her father. Mr. McLaughlin remained with Mr. Sasse until Dr. Gillespie arrived.

He asked him what the trouble was. Mr. Sasse replied that "when he was going down the stairway, everything before him got blank, and he felt a faintness coming over him, and he must have fallen." That Mr. Sasse's clothing was soiled from the dust, and that he brushed him off. That he asked him if he had any accident. He said, "No," and that he made no complaint of being hurt in any particular way.

Dr. Gillespie, who has been serving at the Emergency Hospital in the Grand Central Station for about six years, testified that he was called to the hospital somewhere between half past 9 and 10 o'clock, and that he saw Mr. McLaughlin and Mr. Sasse there; that he asked Mr. Sasse what happened, and he said he had had a fainting spell; that he saw everything blank as he was going down those stairs; that was all he remembered until he came to; that he remained there until well along towards noon, when he went away with some friends.

Wygant, who was an insurance broker who had taken out the policy for Mr. Sasse, testified:

That he had seen Sasse's death in the newspapers, and Mrs. Sasse wrote him a letter and telephoned him, and he went to the house while the body was still there and said to her: "Mrs. Sasse, in view of the fact that Mr. Sasse has an accident and health policy with me, and likewise, as he has told me, with other companies, I think you had better get them out and let us go over them, and see exactly all the provisions of the various policies, which he has carried.' She got the policies from some desk and we went over them. Q. Was there any conversation as to about what happened to her husband? A. She stated to me simply what her daughter had stated to her—that Mr. Sasse was taking the little girl to put her on a train, and that the little

girl stated that he seemed—as near as I can remember the language—collapsed. He sank. Q. Did you make any inquiries whether there had been any accident? A. I did. I said to Mrs. Sasse: 'Did Mr. Sasse fall downstairs?' I said: 'Did he trip over anything?' I said: 'Did he stumble, or did he fall frontwards or backwards, or what?' And she said, from what the little girl says, that he collapsed, he sank. Well, I said: 'It is very important. What was his condition when he was brought home?' 'Well,' she said, 'his condition was very much soiled.' She said they had given him up in the Emergency Hospital some very active cathartic, and when he came home he was in a pitiable condition, his body, and that she had to immediately get him to bed and wash him and rub him down, and in the course of a few days, or during the past few days, had rubbed him with alcohol and water, and so on; and I said: 'Now, Mrs. Sasse, could you find any marks on his body? Could you find a bump anywheres, anything that would indicate that he had hurt himself?' I said: 'No matter where, even in his hair, if you can find a little bump, something on his body somewheres that will show that he had an accident and fell and hurt himself.' And she said, 'No,' and washing and rubbing him down in alcohol she could not find any marks of that kind." That stated to him that her husband was covered for the health part of his policy, and she could not see that he was covered for accident. He went there to help her get the insurance if he could, and that he left her blanks for the health policies.

While Mrs. Sasse testified to bruises all over her husband's body, she did not call a doctor for two days, and he found only one small bruise under the armpit about two or three inches in diameter. The day after the death, without notice to the company, an autopsy was made by two physicians at the request of the plaintiff. The family physician assisted, and testified that he knew the law and the rules of the board of health in relation to making certificates of death and reporting deaths caused by any casualty or accident; that, knowing all this, he did not mention in the certificate filed any suggestion of an accident, nor did he report the case at the time.

It was discovered that the immediate cause of death was the rupture of a large aneurism on the ascending part of the aorta. The claim is that the fall on the 10th of August caused a rupture of the wall of the aorta, which developed into this enormous aneurism in 11 days, the rupture of which on said day caused the death. It would serve no useful purpose to review the medical testimony. The weight of the credible evidence, given by physicians who conducted and were present at the second autopsy, held on September 26, 1912, at the request of the company, on plaintiff's consent, and those called in as expert witnesses, is that such an aneurism as was there discovered, in the ascending part of the aorta, as large as a man's fist, 3 by 3½ by 4 inches in size, was due to a diseased condition of the aorta, was a condition of long standing and of slow growth, taking upwards of a year and a half to develop, as shown by the thickening of the walls and the stratified blood clots which nature had thrown in to protect the damage done. It was the rupture of this aneurism, the result of disease, which caused the death. The condition disclosed was not and could not have been caused by the fall testified to, even assuming that the deceased did not merely faint and collapse, but did trip and fall as testified to by his daughter.

The liability of the defendant does not extend to a death which results from or in consequence of any disease, or is caused wholly or in

.part by bodily infirmity or disease, nor to any death, unless caused by bodily injury which is external, accidental, and is the proximate, sole, and only cause of death. The plaintiff was bound to show that her decedent's death came strictly within the terms of the contract.

[3] "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." Preston v. Ætna Ins. Co., 193 N. Y. 142, 85 N. E. 1006, 19 L. R. A. (N. S.) 133, where it was held that an exception in a prior insurance policy of loss caused by fire originating within the machine prohibited recovery when the machine ran into a ditch full of water, gasoline ran out on the surface of the water, and the fumes thereof were ignited by the automobile lamp; Houlihan v. Preferred Accident Ins. Co., 196 N. Y. 337, 89 N. E. 927, 25 L. R. A. (N. S.) 1261, where a policy of accident insurance covering injury caused by the burning of a building while the said person is therein was held not to extend to a death caused by a fire in a room in a building, the building not being burned; Rosenthal v. American Bonding Co., 207 N. Y. 162, 100 N. E. 716, 46 L. R. A. (N. S.) 561, where a policy against burglary, which excepted liability unless there were visible marks upon the premises of the actual force and violence used in making entry, did not cover a loss where a technical forcible entry was made, two employés were assaulted with revolvers, knocked down, tied up, and gagged, and the property feloniously taken away, because there were no visible marks upon the premises.

I have reached the conclusion, on the merits, that the verdict was against the evidence and the weight thereof. The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. Order filed.

DOWLING and HOTCHKISS, JJ., concur. INGRAHAM, P. J., and SCOTT, J., concur, and vote to dismiss complaint.

---

SASSE v. TRAVELERS' INS. CO. (No. 7592.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

Appeal from Trial Term, New York County.

