(22 App. Div. 552.)

LAMB v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. INSURANCE—DEFAULT IN PREMIUMS—WAIVER OF FORFEITURE.
  A policy on the life of plaintiff's intestate provided that, in case of the agent's failure to collect premiums when due, they must be paid at defendant's office within four weeks, otherwise it might cancel the policy without notice, and that its agents were not authorized to waive forfeitures of more than four weeks' standing. In an action on the policy it appeared that on June 17, 1895, the premium was nine weeks in arrears, and was then paid by plaintiff, but a receipt was given to him disclaiming liability until acceptance of application to revive the policy on the books, and crediting of the payment in a premium receipt book. The insured was then seriously ill, and died the next day. Her condition was not known to the agent accepting payment. *Held*, that the facts did not support a conclusion that the forfeiture was waived.

2. SAME.
  It is essential to the waiver of a forfeiture of a policy of life insurance that there be a recognition of its validity, after a knowledge of the forfeiture, by an agent who is not denied by the policy the power to do it.

3. SAME.
  The death of an insured does not deprive an insurance company of the power to waive a default occurring during her life.

4. WITNESS—CREDIBILITY.
  The relation between a life insurance company and its superintendent is such as to present the question of his credibility for consideration, when he testifies in its behalf in an action on a policy.

Appeal from trial term, Kings county.

Action by Henry Lamb, as administrator of Mary Lamb, against the Prudential Insurance Company of America. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BRADLEY, BARTLETT, and HATCH, JJ.

O. B. Gould, for appellant.
Thomas F. Magner, for respondent.

BRADLEY, J. The action was brought to recover the amount of the insurance upon the life of plaintiff's intestate by the policy of the defendant of date August 24, 1891. She was the wife of the

plaintiff, and died June 18, 1895. The defense is that, by reason. of default in payment of the premium, the policy had become in-- operative at the time of her decease. The policy in question was. one of eight policies issued by the defendant upon the lives of the plaintiff, his wife, and their minor children. The aggregate amount of the premiums payable weekly upon them was 55 cents. These were paid up to April 15, 1895. The policy in question provided that "if, for any reason, the premium" should not be collected by the agent when due, it would be the duty of the insured, before the premium should be in arrears four weeks, to bring or send it to the home office, or to the company's agent; and, in the event of the failure to perform this duty, the company might "cancel this policy without notice to any person or persons interested therein." All the policies were presumably the same in that respect. It does not appear that any action was taken by the defendant to cancel any of the policies prior to the 17th day of June, 1895, when the plaintiff called at the office of the defendant, ascertained that the amount of premiums then unpaid upon the eight policies was $4.95. He then paid $4.40, and stated that he would pay the other 55 cents. on the call of the agent at his house the next Monday. The agent did not call, and the plaintiff paid that residue on July 11th. If there had been nothing to qualify the effect of those payments, the acceptance of them would have operated as a waiver of the default. But at the time each of those payments was made the agent of the defendant gave the plaintiff a receipt to the effect that, "if the company accept the revival of the application, the amount paid will be credited in the premium receipt book belonging with the policy, otherwise the money will be returned," and that "upon no circumstances will the company be liable under said policy in case of death until the policy has been revived on the books of the company, and the money credited in the premium receipt book belonging to said policy." It does not appear that the plaintiff was advised by the policy, or otherwise than by the receipt, that anything to be done by the insured or by him was requisite to the revival of the policy. He knew that the insured was nine weeks in arrears in payment of the premium when he paid the $4.40. And by reference to the policy he could have seen the provision to the effect that it would be void if the weekly premium was not paid according to its terms, with the consequence that the premiums which had been paid would be forfeited to the company, and that its agents. were "not authorized to make, alter, or discharge contracts, or waive forfeitures, or receive premiums on policies in arrears beyond the time allowed by the regulations of the company, which in no case shall exceed four weeks." The situation was such, when the plaintiff made the payments in June and July, 1895, as to enable the defendant to qualify the receipt of the money by the conditions expressed in the receipts, one of which conditions was the acceptance by the company of revival application. The import of this was that some application for that purpose was to be made by or in behalf of the insured. This was not done in behalf of the plaintiff's intestate. And it may be that, if the defendant's officer

or agent, at the time the payment was made, had known her phys-
ical condition, he would have declined to receive so much of the
amount as covered the weekly premium of 10 cents, amounting to
90 cents in arrears on the policy issued to her.   She was at that
time very ill,—not expected by the plaintiff to survive her then ex-
isting illness,—and she died the next day.   Of this condition of the
insured the defendant's agent was not advised.   And when the
proofs of death were, soon after, furnished to the company, it de-
·clined to pay.   Up to that time no fair and reasonable interpreta-
tion of what had occurred can permit the conclusion of waiver of
the default in payment of the premium on the policy taken by the
intestate, or to estop the defendant from asserting forfeiture. ·
While an insurance company will not be allowed any benefit from
the doubtful construction of the terms of its policy, nor will any
prejudice to the insured or those who represent him be permitted
therefrom, the provisions of a policy of insurance, like those of other
contracts, are to be observed, and the legal rights of the parties
governed by them.   It is essential to the waiver of a forfeiture of a
policy that there be a recognition of its validity with knowledge of
such forfeiture (Weed v. Insurance Co., 116 N. Y. 106, 22 N. E. 229), ·
and then it can be done only by an agent who is not denied by the
policy power to do it (Marvin v. Insurance Co., 85 N. Y. 278).

A further question arises upon occurrences subsequent to the
death of the intestate.   On August 24, 1895, Robert Hoffman, one
of the defendant's agents, wrote and sent a letter from the office of
the company to Mr. Lamb, asking to be advised if he wished to
keep up his policy, or wished to be crossed off the books of the com-
pany.   Thereupon he placed $4.60 in the hands of his attorney, who,
in his behalf, inclosed that amount by his bank check, payable to
the order of the defendant, in a letter of August 26th, addressed to
Robert Hoffman, stating that Mr. Lamb desired to keep up his
policies, and to that end the amount due to that date was inclosed;
and then added that the payment of the $4.60 was made, and the
check to be used, upon the condition that "all the above-mentioned
policies were in force and paid up to June 17th, and that all except
the last are in force and paid to date."   The number of policies
therein referred to was eight, designated by numbers, the last of
which was intended as that issued to the plaintiff's intestate, and
the others were intended to designate the other seven issued to
Mr. Lamb and the other members of his family.   In this letter ref-
erence was made to the fact that the premiums were paid by Lamb
up to April 15th, and that "afterwards he paid. $4.95, which was
all the premiums on the above-mentioned policies due to and includ-
ing June 17th last."   This inclosed check was received by the su-
perintendent of the company, indorsed by him for credit to the com-
pany by the bank on which it was drawn.   It may be assumed that
it was so credited.   So far as appears, there had been no actual
cancellation of the policy in question by the company.   The money
paid in June and July on account of the premiums in arrears upon
that policy was retained, and at the time this check inclosed in
the letter was sent and received the company had been advised of

the death of the intestate by the proofs to that effect, furnished to it in June before. Under such circumstances the fact of her death did not deny to the defendant the power to waive the prior default during her life. Shay v. Society, 54 Hun, 109, 7 N. Y. Supp. 287; Magner v. Association, 17 App. Div. 13, 44 N. Y. Supp. 862. Whether this was the consequence of the receipt and retention of the amount so remitted is a question not entirely clear and not free from doubt upon the evidence. The superintendent testified that the letter inclosing the check was not given by Hoffman to him when the check was received; that his first recollection of seeing the letter was within 10 days of the trial; that he does not remember when he received the letter; that he found it in looking over the old papers of Hoffman in the office; and that "the agent tendered the check at the office to apply towards the revival of the Lamb policy, for which we gave a revival receipt, the policy having lapsed.". On his cross-examination the superintendent testified that the check "was applied upon the Lamb family insurance,—upon all the policies that were to be revived,—not knowing of the death of any of them; I had not heard of the death." Hoffman was not a witness on the trial. The relation of the superintendent to the defendant was such as to present the question of his credibility for consideration. Dean v. Van Nostrand, 23 Wkly. Dig. 97. Whether he was then advised of all the facts essential to the treatment of the acceptance of the check, and placing the amount of it to the credit of the company as a recognition of the existing validity of the policy in question, and a waiver of the default in payment of the premium, was, in view of all the circumstances, a question of fact for the jury, and should have been submitted to them.

We have not failed to observe that six renewal applications were subscribed by Mr. Lamb for himself and five of his children, of date July 19, 1895. The circumstances under, and the understanding with, which that was done are the subject of conflict in the evidence of the defendant's agent and Lamb, the latter denying that he was advised of or understood the purposes of the papers, or that anything was then said about the application of the money which had before been paid to the company on account of the arrears on the policies. This matter is also the subject for the consideration of the jury, as bearing upon the question of fact before mentioned.

These views lead to the conclusion that the judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.