PEARLSTINE v. WESTCHESTER FIRE INS. CO.

1. INSURANCE—NONSUIT—PRACTICE.—Even if evidence in insurance case shows that insured had not complied with conditions, nonsuit at close of plaintiff's case would be improper, as plaintiff might show waiver in reply. In such cases motion for nonsuit should be made at close of all evidence.

2. EXCEPTIONS—NEW TRIAL.—This Court will not consider exceptions to refusal of new trial on grounds not stated in record to have been urged on Circuit.

3. CHARGE.—Stating affirmatively in charge issuable fact is not prejudicial error, where the inadvertence is manifest, and the issue is afterwards properly submitted under request of party complaining.

4. IBID.—REQUEST.—In submitting to the jury at the request of a party the questions of ownership and actual knowledge of ownership as isues for their decision, the Court should instruct them in considering the issue of actual knowledge to consider also the issue of knowledge of facts sufficient to put on inquiry as to true ownership.

5. IBID.—IBID.—It is not proper for Judge on request to select isolated fact and to state its effect.

6. INSURANCE—PRINCIPAL AND AGENT.—Where the principal is absent and the facts are within the knowledge of the agent, proofs of loss made and sworn to by agent fulfils a stipulation in a fire insurance policy that proofs of loss shall be made by the insured.

7. INSURANCE.—Insured cannot relieve himself of the covenant in an insurance policy, that he would submit himself to examination at instance of insurer as to his loss, by saying that he had fled the country to avoid arrest.

8. IBID.—WAIVER.—If before the fire, during the currency of a policy of insurance, the insured violates its terms and conditions in a material particular, without the knowledge of the insurer, a failure to return the premium after the fire is no evidence of waiver. *Schroeder* v. *Ins. Co.*, 51 S. C., 180, *distinguished.*

Before PURDY, J., Bamberg, December term, 1903. Reversed.

Action by T. W. Pearlstine against Westchester Fire Insurance Co. From judgment for plaintiff, defendant appeals.

*Messrs. Jno. C. Reed* and *Jno. R. Bellinger,* for appellant, cite, *generally:* 7 Ency., 1 ed., 1020, 1043, 1046-7; 6 S. C., 83; 19 S. C., 511; 23 S. C., 389; 25 S. C., 24, 181; 26 S. C., 490; 29 S. C., 96; 5 S. C., 465; 64 S. C., 416; 58 S. C., 186; 55 S. C., 450; 48 S. C., 195.

*Messrs Izlar Bros.* and *H. F. Rice,* contra. *Mr. Rice* cites: *If there was any testimony tending to show that insurance agent knew at issuance of policy that goods belonged to T. W., nonsuit was properly refused:* 48 S. C., 226; 44 S. C., 478; 52 S. C., 224; 55 S. C., 589; 54 S. C., 600; 42 S. C., 14; 43 S. C., 26. *As to examination of insured:* 7 Ency., 1 ed., 1046; 14 Mo., 220.

November 5, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action on a fire insurance policy covering a stock of goods, the defendant sets up the failure of the plaintiff to comply with three stipulations of the policy:

1. "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

2. The provision that the proof of loss shall be rendered within sixty days, "signed and sworn to by said insured,

stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property," etc.

3. "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same."

At the close of plaintiff's testimony, defendant asked for a nonsuit on the ground that the foregoing conditions to recovery had not been complied with. If we assume that the evidence established non-compliance, a nonsuit would have been improper, because, as has been frequently held, the plaintiff might show waiver by the defendant. *Sample* v. *Insurance Co.,* 42 S. C., 14, 19 S. E., 83; *Copeland* v. *Assurance Co.,* 43 S. C., 26, 20 S. E., 500; *Carpenter* v. *Accident Co.,* 46 S. C., 546. The exceptions as to refusal of nonsuit cannot, therefore, be sustained. In such cases the motion for nonsuit or to direct a verdict should be made at the close of all the testimony.

The verdict being for the plaintiff for the amount of the policy, the defendant made a motion for a new trial, which was refused. If it appeared from the record that the motion was made on the ground that there was no testimony on which the verdict could stand, this Court would be in a position to consider whether there was any real question of fact made by the evidence as to the violation of the policy on the part of the plaintiff, and any evidence of waiver, but the record is silent as to the grounds upon which the new trial was asked. The Court can consider nothing outside of the record. We cannot infer from the exceptions or the general course of the trial that the motion for a new trial was made on the ground of a total lack of proof to support the claim. Without expressing any opinion whatever as to the evidence therefore, the ex-

ceptions alleging error in refusing to grant a new trial must be overruled.

The defendant's first four exceptions to the charge relate to the stipulation in the policy as to exclusive ownership. It is true, the Circuit Judge did say in opening his charge that the defendant admitted the fire destroyed the property of the plaintiff, but the statement was a manifest inadvertence to which it would have been well for defendant's counsel to call the Court's attention. Subsequently the question of exclusive ownership was submitted as requested by defendant, and this should be held to remove any erroneous impression made on the jury by the first remarks as to ownership.

The defendant's first and second requests were as follows: "1. That if the jury finds that the policy in question was issued to T. W. Pearlstine, and at that time the property insured belonged to S. W. Pearlstine and not to T. W. Pearlstine, and that fact was not known to the defendant, or its agent, plaintiff cannot recover. 2. That if the jury find that at the time of the fire the property insured belonged to S. W. Pearlstine and not to T. W. Pearlstine, and that fact was not known to defendant, or its agent, plaintiff cannot recover." The Circuit Judge charged these requests, adding in substance that knowledge of facts which should suggest inquiry and lead to the discovery of the real ownership, would be equivalent to actual knowledge. The defendant, without challenging the correctness of the addition made to the requests as an abstract proposition, insists it was erroneous and prejudicial, because there was no testimony upon which to base it. Assuming without deciding that S. W. Pearlstine and not the plaintiff, T. W. Pearlstine, was the owner, that the defendant had no knowledge of that fact and that there was nothing to put him upon inquiry, and assuming further, that it is reversible error to submit questions to the jury for which the testimony affords no basis, it does not follow that this exception can be sustained. The defendant itself requested the questions of

ownership and actual knowledge by the defendant of the true ownership to be submitted to the jury as issues for them to decide, and, therefore, cannot complain that the Court in the same connection instructed the jury in considering the issue of actual knowledge to consider also the issue of knowledge of facts which would put defendant on inquiry as to the true ownership. The requests of defendant could not have been charged at all except with the modification made by the Court. *Gandy* v. *Insurance Co.*, 52 S. C., 224, 29 S. E., 655.

The defendant's third request was: "3. That if the jury find that S. W. Pearlstine was in charge of the property, managing and controlling it under a power of attorney from T. W. Pearlstine, that fact was not sufficient to charge the agent of defendant with the knowledge, or notice, of any interest in S. W. Pearlstine in said property." It is obviously true that the single fact of the management of property under a power of attorney by the agent named in the paper does not charge those who deal with the reputed agent acting in the name of the principal with knowledge or notice that the agent and not the principal is the real owner; but it is not proper for the Circuit Judge to select isolated facts and state their effect. Whether the evidence would have justified a charge that T. W. Pearlstine was not the sole and unconditional owner of the property, and that there was nothing to show knowledge or information sufficient to put the defendant on inquiry, and that under the terms of the policy defendant was not liable unless there was a waiver of the stipulation as to ownership, we repeat, to avoid misunderstanding, is quite a different question, and one not before the Court. Hence we decide nothing on the question of ownership and insurable interest.

The fourth request was manifestly covered by the charge made under the first and second requests.

The proof of loss was made out and sworn to by S. W. Pearlstine, the agent, who conducted the mercantile business

under a power of attorney from T. W. Pearlstine, and not by T. W. Pearlstine himself, in whose name the policy was issued. The defendant next insists that the Circuit Judge erred in charging: "The authorities seem to hold that an agent for the insured can make the proofs of loss when the insured is absent at the time the fire occurred, and the agent is in a position to furnish the information necessary to complete the proofs of loss, or when the insured is in a position where, for any reason, it would be impossible for him to make the proofs and the agent possesses the necessary information."

"It is the province of courts to enforce contracts—not to make or modify them. When there is neither fraud, accident nor mistake, the exercise of dispensing power is not a judicial function." *The Harriman* v. *Emerick,* 9 Wall., 161, 19 L. ed., 633. This is as true of insurance contracts as any others, yet stipulations in them, as in other contracts, must be interpreted reasonably, having regard for the purpose they were intended to serve. A proof of loss is an entirely *ex parte* statement of the facts concerning the property, the loss and the insurance, intended only to afford information as a basis for settlement if satisfactory, and if not a basis for investigation. This statement, made in behalf of the insured by an agent fully conversant with all the facts and having charge of the property, serves these purposes as well as if made by the insured himself. Accordingly, it has been generally held when the principal is absent and the facts are within the knowledge of the agent, a proof so made is sufficient. *Firemen's Fund Ins. Co.* v. *Sims,* 42 S. E., 270 (Ga.); 13 A. & E. Ency. Law, 332; 2 May on Insurance, sec. 465, and note 6; *Lumberman's Mutual Ins. Co.* v. *Bell,* 57 Am. St. Rep., 140 (Ill.); *German Fire Ins. Co.* v. *Grunert,* 1 N. E., 113 (Ill.); *Sims* v. *State Ins. Co.,* 4 Am. Rep., 311. The fifth and sixth exceptions are, therefore, overruled.

The agreement of the insured that he will "submit to examinations under oath by any person named by this com-

pany and subscribe the same," stands upon an entirely different footing. The manifest purpose of inserting this stipulation is to afford a method of detecting imposition and fraud. In demanding examination, the insurer indicates dissatisfaction with the formal *ex parte* statement or "proof." In such case the insured has agreed his conscience may be searched by questions put to him face to face, where there is less opportunity for studied concealment. He and not his agent has an interest in the claim for the insurance and, therefore, a motive for fraud. To hold that the person to whom an insurance policy is issued could substitute an agent for himself to undergo such an examination, would be to disregard not only the letter but the spirit of the actual contract and make another for the parties. We know of no authority which holds that an agent may be substituted for such an examination.

It need hardly be said that if circumstances arise without fault of the insured which make it practically impossible for him to appear for examination, from necessity he will be excused. In this case, however, the excuse offered in evidence on the part of the plaintiff for his failure to submit to the examination was that a few weeks before the fire he had killed a man, and was at the time of the demand and of the trial a fugitive from justice. The Circuit Judge refused to charge, "That the fact that plaintiff is a fugitive from justice, if such be the fact, would not excuse him from appearing and submitting to an examination, if demanded by defendant." This was a manifest error. Mere unexplained absence would not be sufficient to excuse compliance with the contract. Certainly intentional and wilful absence will not excuse. *Firemen's Fund Ins. Co.* v. *Sims,* 42 S. E., 269 (Ga.) ; *Gross* v. *Ins. Co.,* 22 Fed., 74; Keener on Quasi-Contracts, 215; 9 Cyc., 639, 649. The plaintiff in this case fled to escape the demand of the State's law that he stand his trial for homicide. It would be startling, indeed, for the law to excuse and sanction his flight and continued absence in defiance of its demand, by holding he could have

the benefit of a contract without performance of its obliga-
tions, because to perform his obligations would entail a sub-
mission to law by undergoing a trial for the crime charged
against him. By accepting such an excuse, the courts would
not only sanction but reward flight from legal process.

The defendant next submits there was error in refusing
to charge that a failure to return the premium after the fire
does not amount to waiver of any of the conditions of the
policy. Good faith would seem to require the in-
surer to cancel the policy and return the unearned
premium, if before the fire, while the policy was cur-
rent, it had notice that the insured had so violated the policy
that under its terms he would recover nothing in case of
loss. In such case the insurer would allow the insured to
hold the policy and rely upon its provisions, while at the
same time it retained the consideration for the unexpired
term, knowing the policy to be valueless. For this reason,
the retention before the fire, of the unearned premium
for the unexpired term, with notice that the policy had
become void under its terms, may be held evidence of
waiver. It is held in *Schroeder* v. *Ins. Co.,* 51 S. C., 180,
28 S. E., 371, that if an insurance company actually re-
ceived the premium after the fire, knowing that other insu-
rance had been taken, in violation of the policy, this would
be evidence of its election to waive the violation. Where,
however, the premium is paid, and in consideration of it
the company contemporaneously issues its policy, which is
a contract to insure on certain conditions therein men-
tioned, and the insured violates those conditions in a ma-
terial particular without the knowledge of the insurer, in
case of loss the insurer is not bound to return the consider-
ation of the policy before standing upon its terms. The
consideration has been paid, not for an absolute promise,
but for a promise of the insurer to hold itself liable for loss
on certain conditions. The company does not fail *in its*
promise by insisting on its conditions; not having broken its
contract, it has a right to retain the consideration. The

insured has received all he contracted and paid for—conditional insurance—and he has no right to demand a return of the price paid from the insurer on pain of liability for unconditional insurance. After the loss occurs as to the property destroyed, the policy is no longer current, but has become matured by reason of the fire, and no question of good faith is involved in retaining the premium, because the rights of the parties are then fixed. Upon these considerations rest *Norris* v. *Ins. Co.,* 55 S. C., 450, 33 S. E., 566, and *Young* v. *Ins. Co.,* 68 S. C., 387.

The Circuit Judge did not submit to the jury the construction of the letters introduced in evidence, as the defendant charges, unless a general submission to them of the question of waiver could be so regarded. There was no request for a specific charge as to the true construction of these letters, or any particular expressions used in them. Indeed, our attention has not been called to any letter or portion of a letter that seemed sufficiently doubtful in meaning to require judicial construction, and that would have been made plainer by any words the presiding Judge could have used.

For the errors in the charge above mentioned, the judgment of the Circuit Court is reversed and a new trial ordered.