EVERETT–RIDLEY–RAGAN COMPANY, for use, etc., *v.*
TRADERS INSURANCE COMPANY.

1. A clause in a policy of fire-insurance which requires that the insured shall "keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit," is not complied with where it appears that the only record of cash sales kept is a cash-book in which no detailed transactions are recorded and only the aggregate amount of cash derived from all sources is set down at the end of each day; and in a suit upon such a policy, where it affirmatively appears from the evidence for the plaintiff that even if the books were present in court it would be impossible to tell therefrom the value of the stock of goods burned, the grant of a nonsuit is proper.

2. It was not error to exclude the evidence offered, or to refuse to allow the amendment to the plaintiffs' petition.

Argued October 20, — Decided November 11, 1904.

Action on insurance policy.     Before Judge Hodges.     City court of Macon.     March 22, 1904.

*Erwin & Callaway* and *M. W. Harris*, for plaintiff.

*Davis & Turner, Hardeman & Jones,* and *Smith, Hammond & Smith,* for defendant.

CANDLER, J.     This was a suit upon a policy of fire-insurance. The plaintiffs bring the case to this court on exceptions to the grant of a nonsuit, the exclusion of certain documentary evidence offered by them, and the refusal of an amendment to their petition.     In our opinion the proper decision of the case turns on the question whether or not there was a sufficient compliance on the part of the insured with that part of the "iron-safe clause" of his policy, which required him to "keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided in first section of this clause, and during the continuance of this policy." The insured testified: "I do not know how from my books it could be ascertained the value of the stock of goods at the time it was burned, except from my independent recollection of the amount of goods on hand, and from the entries made on my ledger of purchases by me. . . I had a cash-book, a day-book, and a ledger; these were all the books that I ever kept

or had at the time of the fire.    I did not keep a book of invoices.

. . I kept no record of my cash sales except in making up my cash-book at night." Immediately after the fire the insured made a written statement containing, among other things, the following: "I have only one book, known as ledger, dating 1899 and 1900. All other books were destroyed by fire. I kept no record of cash sales. Ledger shows all purchases made, and also all credit sales." We are clear that this evidence establishes a non-compliance on the part of the insured with his contract of insurance, and that therefore there can be no recovery on the policy. The evident intention of this clause of the contract is to enable the insurance company, by means of accurate records of the business of the insured, to ascertain with substantial certainty and definiteness the value of the stock of goods destroyed by fire; and here it is admitted that even if the books which were destroyed were produced in court, they would furnish no reliable information on that subject. A cash-book which only shows the amount of cash taken in at the end of each day, giving no indication of the source from which the cash is derived, whether from cash sales, from the payment of past-due bills, or what not, can in no sense be considered "a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit." A case in point, although it goes somewhat further than we find it necessary to go in the case at bar, is that of Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103, cited in Ostrander on Fire Insurance (2d ed.), § 300. In that case the policy contained a provision practically identical with the one now under consideration, and "the principal contention between the parties related to the question of whether the assured had complied with the terms of the policy in regard to keeping books containing a record of his purchases and sales." The following is quoted from the opinion of the court: "While it may be, that, being a country merchant, whose system of bookkeeping was known to appellant, he was not required to keep a full set of commercial books, yet it was his duty to comply with the agreement contained in his policy. This the contract required as a condition upon which his recovery depended. . . He testified that he kept a 'credit or sale' book, showing all credit sales; that he

kept a 'cotton book,' showing all cash and goods paid for cotton; that he kept a 'cash account,' showing all cash taken in, and copies of bills of purchase, showing all goods purchased. . . Appellee testified that he kept a merchandise account and a cash account, . . and it appears at the end of each month he entered the amount of purchases during the month, and that he kept a book in which he entered each day his cash sales, and that at the end of each month he entered the aggregate amount of cash received on his books. . . It is impossible to obtain any correct or satisfactory idea of the amount of goods on hand and destroyed by the fire, from this mode of bookkeeping. For aught the books show, goods of the value of $400 may have been sold for $40, as the items are not given, but only the aggregate amount of sales. . . The appellee, having failed to keep a set of books showing a record of all business transacted, including purchases and sales for cash or credit, as he undertook to do, was not entitled to recover." See in this connection, however, the case of *Insurance Co.* v. *Ellington*, 94 *Ga.* 785, where this court has adobted a more liberal rule than was held by the Arkansas case, supra.

As before indicated, the point discussed in the foregoing substantially controls the decision of the case adversely to the contentions of the plaintiffs in error. The amendment offered sought to set up a waiver, on the part of the insurance company, of any benefits that it might derive from a non-compliance with the terms of the policy by the insured. The grounds upon which it is contended that non-compliance with the terms of the policy was waived were, that the company received from the insured, within sixty days after the fire, written notice of the fire and proofs of loss; that it called upon him to produce certain invoices, and required him to submit to an examination concerning the fire; that it failed to return a payment of his premium made after the fire occurred; that it put him to expense in securing duplicate invoices; and that it refused to pay the loss. None of these allegations are sufficient to constitute a waiver of non-compliance with the terms of the iron-safe clause. It was the duty of the insured, under his contract with the company, to give notice of the fire and produce satisfactory proofs of loss and documentary evidence required thereunder. The payment of the premium was

but the just compensation due the company for the risk it had assumed upon the issuance of the policy, and its acceptance and retention in no wise prevented it from asserting its rights under the contract.    2 May on Ins. (4th ed.) § 567.    Of course the refusal to pay the loss, under the circumstances of the present case, is in no respect a waiver.    In view of the affirmative evidence of the assured that he violated that portion of his contract which we have had under consideration, it can in no event be held that the refusal of the amendment was error.    In like manner, the ledger which was excluded from evidence would not, according to the plaintiffs' own showing, have benefited their case, and, regardless of whether it was properly identified, its exclusion was not erroneous.

*Judgment affirmed.    All the Justices concur.*