## 11172

### WHALEY v. GUARDIAN FIRE INSURANCE CO.

#### (117 S. E., 209)

1. INSURANCE—EVIDENCE OF WAIVER OF CUMULATIVE INSURANCE CLAUSE AFTER LOSS OCCURRED HELD SUFFICIENT TO SUPPORT DENIAL OF DIRECTED VERDICT.—Evidence that after loss occurred insurer's local agent asked for the policy and a statement of loss, and insured delivered both to him, and insurer retained the return premiums for about 40 days after the agent had knowledge that additional insurance had been procured, *held* sufficient evidence of a waiver of. a clause providing that the policy shall be void if insured procures additional insurance on the property covered thereby, to justify a refusal to direct a verdict for insurer.

2. INSURANCE—GENERAL RULE AS TO WAIVER OF FORFEITURE BY INSURED.—Generally, where insurer, with knowledge of any act on the part of insured working a forfeiture, enters into negotiations with him, recognizing the continued validity of the policy, and thus induces insured to incur expenses or trouble under the belief that his loss will be paid, the forfeiture is waived.

3. INSURANCE—RETENTION OF UNEARNED PREMIUMS EVIDENCE OF INTENTION TO WAIVE FORFEITURE.—Where an insurance company has aright to cancel a policy, but fails to cancel it and return the unearned premiums, either before or after the fire, the jury may consider that as evidence of intention to waive the forfeiture.

4. INSURANCE—CONDUCT OF LOCAL AGENT ADMISSIBLE ON QUESTION OF WAIVER.—In view of Civ. Code 1912, §§ 2711, 2712, the statements and conduct of a local agent *held* admissible against insurer on the issue of waiver.

5. INSURANCE—CLAUSE RELATING TO TIME OF PAYMENT AFTER PROOF OF LOSS HELD NOT TO AFFECT QUESTION OF WAIVER BY RETAINING PREMIUMS.—A policy provision, providing that damages should be payable 60 days after proof of loss, *held* not to exempt the insurer during the 60-day period from the presumption of waiver of forfeiture arising from retention of premium.

6. INSURANCE—BASIS OF DOCTRINE OF WAIVER STATED.—Waiver is predicable on any acts or conduct of insurer, after knowledge of a breach, either before or after the loss, tending to show recognition of the validity of the policy, and an intent to relinquish the right to avoid it for the known breach.

Before N. G. EVANS, SPECIAL JUDGE.   Orangeburg, May, 1922.   Affirmed.

Action by William M. Whaley against Guardian Fire Insurance Co.    Judgment for plaintiff and defendant appeals.

*Messrs. J. Stokes Salley, M. M. Mann* and *Fowles & Bailey,* for appellant.    Fowles & Bailey cite:    *Policy payable* 60 *days after fire:*    Hall Fire Ins., 53; 83 S. C., 13; 30 Fed., 356.    *And insurer has right to take that period for proper investigation:*    113 S. C., 462; 44 Cal., 264; 45 Pac., 73; 22 N. W., 6; 152 N. Y. Supp., 1022.    *No waiver:* 68 S. C., 387; 83 S. C., 262; 25 L. R. A., 4; 70 S. C., 75; 102 S. C., 115; 114 S. C., 183.

*Messrs. Raysor, Moss & Lide* and *Wolfe & Berry,* for respondent, cite:    *Acts of agent binding on company before and after fire:*    1 Civ. Code 1912, Sec. 2712; 81 S. C., 160; 115 S. C., 58; 97 S. C., 379.    *Evidence of waiver:* 46 S. C., 91; 78 S. C., 396; 78 S. C., 444; 54 S. C., 602; 115 S. C., 59; 102 S. C., 125.

April 3, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

On January 22, 1921, the defendant-appellant, through its local agent, C. R. James, issued a policy of fire insurance for $2,000, to continue in force for one year, on the dwelling and household goods of the plaintiff.    The policy, which was in the usual standard form, contained a clause providing that it was to "be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy.    On or about May 12, 1921, the insured applied for and secured an additional policy for $2,000 on the same property in another company.    The property was destroyed by fire June 8, 1921.    Plaintiff recovered in an action upon the defendant's policy, which was contested by defendant upon the ground that the contract had been avoided or forfeited by the insured's action in subsequently taking out ad-

ditional insurance.    The appeal raises the one question of
whether the special presiding Judge, Hon. N. G. Evans,
committed error of law in refusing defendant's motion for
a directed verdict upon the ground that there was no evidence
of waiver by defendant of the undisputed breach of the
additional insurance clause of the policy.

The testimony of C. R. James, a witness for the de-
fendant, tended to establish that he was the local
agent of the defendant company; that on the morn-
ing after the fire he learned of the other insurance for the
first time; that he and Mr. Loryea, agent for the other in-
surance company, then went to where the house was burned;
that he talked with Whaley there; that shortly after the fire
he told Whaley to bring his policy and leave it in witness'
office; that about a week after the fire he requested Whaley,
the insured, to furnish him with a statement or "inventory
of his losses"; that Whaley did so; that this document
was accepted and kept by him; and that at the time of these
occurrences no nonwaiver agreement had been signed.    The
testimony of J. E. Wallace, a witness for the defendant,
tended to establish that he was the insurance adjuster to
whom the loss was referred by the company; that in about
a week or 10 days he went to St. Matthews, and accompanied
by Mr. James, his local agent, and the other agent, went
to see Whaley, the insured; that he then reported to the
company; that he went back a second time, about 44 days
after the fire, tendered the insured the return premium, and
told him the company denied liability.    We think it fairly
inferable from this evidence that after knowledge of the
alleged forfeiture there was (1) a request for the policy and
for what might be deemed proofs of loss from the insured;
(2) the furnishing of information as to the loss by insured;
and (3) the retention of the "inventory" furnished and of
the so-called "return premium" for a period of about 40
days after knowledge of the breach.

12—S. C.—124

A well-established general principle, recognized and applied by this Court in numerous decisions, is thus stated in 14 R. C. L. p. 1197, § 376:

"It is the general rule that when an insurer, with knowledge of any act on the part of the insured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, and thus induces him to incur expense or trouble under the belief that his loss will be paid, the forfeiture is waived. This rule is most frequently applied to a request for proofs of loss from the insured after knowledge of the forfeiture," etc.

See *Curnow v. Insurance Co.,* 46 S. C., 79; 24 S. E., 74. *Norris v. Insurance Co.,* 57 S. C., 358; 35 S. E., 572. *Kingman v. Insurance Co.,* 54 S. C., 599; 32 S. E., 762. *Montgomery v. Insurance Co.,* 55 S. C., 6; 32 S. E., 723. *Cobb v. Insurance Co.,* 78 S. C., 396; 58 S. E., 1099. *McMillan & Son v. Insurance Co.,* 78 S. C., 444; 58 S. E., 1020, 1135.

In the case of *Kingman v. Insurance Co., supra,* the Court quotes with approval the following from the case of *Titus v. Insurance Co.,* 81 N. Y., 410:

"It may be asserted broadly that if in any negotiation or transaction with the assured, after knowledge of the forfeiture, it [the insurer] recognizes the continued validity of the policy, or does acts based thereon, or requires the assured by virtue thereof to do some act, or incur some trouble or expense, the forfeiture is as matter of law waived; and it is now settled in this Court after some difference of opinion that such waiver need not be based upon any new agreement, or an estoppel."

It is also well settled in this state that:

"When an insurance company has a right to cancel a policy, and fails to cancel it and return the unearned premium, either before or after the fire, the jury may consider that as evidence of intention to waive the forfeiture." *Norris v. Insurance Co.,* 57 S. C., 358; 35 S. E., 572. *Powell v. Insurance Co.,* 97 S. C., 375; 81 S. E., 654. *Scott v. In-*

*surance Co.,* 102 S. C., 115, 126; 86 S. E., 484.   *Spence v. Insurance Co.,* 104 S. C., 403; 89 S. E., 319.   *Porter v. Insurance Co.,* 107 S. C., 393; 93 S. E., 141.

Upon the issue of waiver the statements and conduct of the local agent were admissible in evidence against the company.   Sections 2711, 2712, Civil Code 1912. *Powell v. Insurance Co., supra; Hankinson v. Insurance Co.,* 80 S. C., 392; 61 S. E., 905.   *Norris v. Insurance Co., supra.*

Unless some valid reason exists for not applying, or for limiting the application of, the foregoing principles to the case at bar, it would seem entirely clear that Judge Evans' ruling was correct.   The contention of appellant's counsel, as we understand it, is that such reason may be found in the clause of the policy providing that "the amount of loss or damage for which this company shall be liable shall be payable 60 days after proof of loss is received," etc.   It is argued that, "construing the paper handed Mr. James, the agent, to be proofs of loss, * * * then the company had 60 days thereafter to decide whether or not it would waive the breach of the policy and pay the claim, or declare the contract forfeited by the breach"; that the 60 days should be allowed the insurer as a reasonable time in which to decide, and that the conduct of the insurance company, and especially its nonaction in failing to return the premium, during that time should not be construed as a waiver of its rights.   We are unable to perceive the logical connection between this 60-day stipulation as to time of payment of a loss and the doctrine of waiver.   The obvious intent of that stipulation is merely to impose a limitation upon the insured's right of action upon the policy, postponing the maturity of the insurer's obligation and the accrual of the insured's right of action until after the lapse of the 60-day period specified.   How the force and effect of a "nonwaiver agreement," exempting the insurer from the operation of the law of waiver for a period of 60 days, can

be read into or reasonably attributed to this stipulation has not been pointed out, and, as we think, is not susceptible of demonstration.

Waiver is predicable upon any acts or conduct of the insurer, after knowledge of a breach, either before or after loss, tending to show recognition of the validity of the policy and an intent to relinquish the right to avoid it for the known breach. *Kingman v. Insurance Co., supra; Norris v. Insurance Co., supra; Powell v. Insurance Co., supra.* When even an express nonwaiver agreement is construed strictly against the insurer (*Cobb & Seal v. Insurance Co.,* 78 S. C., 397; 58 S. E., 1099), certainly the effect of such an agreement is not to be extended by implication to a provision of the contract expressly referring to an entirely different matter.

The exception is overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. CHIEF JUSTICE COTHRAN (dissenting): The uncontradicted evidence in this case presents a claim which does not at all accord with my conception of justice, and the leading opinion discloses a misconception of the law of waiver as I interpret it. This, with the greatest deference and respect for the judgment of the majority of the Court, I shall endeavor to demonstrate.

The plaintiff owned a house, with furniture, upon which he desired to procure insurance. He applied to the agent of the defendant company for it, and they agreed in writing upon an insurance valuation of the building at $3,000, whereupon the policy in question was issued, $1,700 upon the house and $300 upon the furniture. This was in January, 1921. Later the plaintiff made application to the same agent for additional insurance, but was told that the property had already been insured for as much as it

would carry.    Determined, notwithstanding this refusal, to
procure more insurance, the plaintiff applied to Mr. Symmes,
an attorney, stating to him that there was no insurance upon
the property, Mr. Symmes, who · did not write insurance,
referred him to Mr. Loryea, agent for the Continental In-
surance Company, to whom he immediately applied, and,
declaring to him also that there was no insurance upon his
property, procured a policy for $2,000, $1,500 on the house
and $500 on the furniture.    So that he then had $3,200 of
insurance upon property, the valuation of which, for the pur-
pose of insurance, he had by agreement with the first agent
fixed at $3,000.    The second policy was issued on May 12,
1921; the fire occurred on June 8th.

The defendant refused payment of the loss, and this ac-
tion  followed;  the defendant  resisting  payment on the
ground that the plaintiff had violated the provision in the
policy against additional insurance without its consent.    The
plaintiff does not attack the validity of the provision in the
contract:

"This entire policy, unless otherwise provided by agree-
ment indorsed hereon or added hereto, shall be void if the
insured now has or shall hereafter make or procure any
other contract of insurance, whether valid or not, on prop-
erty covered in whole or in part by this policy."

It is not only a valid matter of contract between the
parties, who are legally entitled and obligated to insist upon
and be bound by it, but it is an exceedingly important ele-
ment in the contract.    As Mr. Joyce says in his work on the
Law of Insurance (2d Ed.), Vol. 4, p. 4104:

"The object of this provision is to prevent the moral
hazard from being increased without the knowledge of the
insurer who has assumed the risk.    Though the insured may
in all cases have an interest in the preservation of the prop-
erty, yet it is certainly true that the motive for its preserva-
tion would not be as strong if several policies existed upon
the property amounting to a sum in excess of the actual value

of the same. In such cases the insured might not be as watchful and careful of the acts of others as he would if the property were not as fully protected. And not only is such a provision a protection against the gross carelessness of the insured in respect to his own acts and the acts of others, but it also tends to prevent any motive existing for the fraudulent destruction of the property by the insured. The condition is a reasonable and valid one, and will be enforced by the Courts."

In *Northern Assur. Co. v. Association,* 183 U. S., 308; 22 Sup. Ct., 133; 46 L. Ed., 213, it is said:

"Overinsurance by concurrent policies on the same property tends to cause carelessness and fraud, and hence a clause in the policies rendering them void in case other insurance had been or should be made upon the property and not consented to in writing by the company is customary and reasonable."

The plaintiff, conceding the reasonableness and validity of this condition in the policy, contends that there was sufficient evidence of a waiver of the forfeiture produced by his admitted breach of this condition, to require a submission of the issue to the jury, and that consequently the presiding Judge was not in error in refusing the defendants motion for a directed verdict. Upon this issue the plaintiff necessarily assumes the burden of proof. He is admittedly in flagrant default of his contractural engagements, in a matter reasonable, valid, and essential to the protection of the legal rights of the defendant, and expressly, by the terms of his contract, made the ground of nonliability. The measure of his duty in excusing that default is thus expressed by high authority:

In *Thompson v. Insurance Co.,* 104 U. S., 252; 26 L. Ed., 765, the Court said:

"Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the

conduct of the other party, on which to base a reasonable excuse for the default."

The right which an insurance company has, by contract and in reason, to deny its. liability in the event that the insured, in violation of his engagement, should procure additional insurance without its consent, is constantly referred to as the right to enforce a forfeiture, and the odium which naturally attaches to that offensive right or claim is visited to such an extent upon this perfectly legal and reasonable element of a valid contract, unjustly in my estimation, that it has been often held that the Courts will seize upon almost any circumstance tending to establish a waiver of the forfeiture to relieve the default.

I cannot see that such a stipulation is different from any other in a legal contract, or should be treated with disdain. One who is thus in default is entitled to no liberality or laxity in the interpretation of the conduct of the other party to the contract, which tends to relieve him of the consequences of the default. It is but reasonable to require of him clear and unambiguous evidence, tending at least to show that the other party, in the face of an unquestioned exculpatory circumstance, intended voluntarily to relinquish his known right to its benefit. In the case of *Hays v. Telegraph Co.,* 70 S. C., 16; 48 S. E., 608; 67 L. R. A., 481; 106 Am. St. Rep., 731; 3 Ann. Cas.,424; the Court held that a stipulation in a telegraph contract, requiring the presentation of a claim within a certain time, may be waived by the acts of an agent investigating the claim upon its merits. The same doctrine is announced in *Kelley v. Railroad Co.,* 84 S. C., 249; 66 S. E., 198; 137 Am. St. Rep., 842, citing the Hays Case. But in the latter the distinction between stipulations affecting the form of a claim, or the time within which it is to be presented, and stipulations affecting the consideration, exemption from liability and conditions of liabilty, is clearly pointed out. The Court says:

"These things, the consideration, the exemption from liability, and the conditions of liability, from the very basis of the contract, and are of its substance, and it is not reasonable to suppose known rights as to them will be lightly relinquished."

The plaintiff offered no evidence on his part to establish this replication to the defendant's defense; he depends entirely upon evidence adduced from the defendant's witnesses; and, resorting to that evidence, he must take it as he finds it.

The circumstances relied upon as evidence of a waiver on the part of the insurance company of the forfeiture all occurred after the fire and are: (1) That the local agent of the insurance company requested the plaintiff to leave the insurance policy at his office, which he did; (2) that the local agent of the insurance company requested the plaintiff to make up and furnish to him a list of the furniture destroyed by fire, which he did; (3) that the insurance company retained the premium which had been paid for about 40 days after the agent had knowledge that additional insurance had been procured in violation of the condition.

The citations and quotations contained in the leading opinion are sufficient authority for this proposition.

Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (a) That it had knowledge of the act of the insured which worked a forfeiture; (b) that it entered into negotiations with the insured which recognized the continued validity of the policy; or (c) that the insured was induced by such negotiations, of the character stated, to incur expense or trouble under the belief that his loss would be paid, the forfeiture waived.

In *Norris v. Insurance Co.,* 57 S. C., 358; 35 S. E., 572, the following charge was approved by the Court:

"When an insurance company, with knowledge of the forfeiture of a policy, sends an agent to adjust the loss, or

does any other act which recognizes the validity of the policy, it is evidence which the jury may consider in determining whether there was intention on the part of the company to waive forfeiture."

In the extract from the case of *Titus v. Insurance Co.,* 81 N. Y., 410, which is quoted in the case of *Kingman v. Insurance Co.,* 54 S. C., 599; 32 S. E., 762, and which is also quoted in the leading opinion in the case at bar, this statement occurs:

"  *  *  *  If, in any negotiations or transactions with the assured, after knowledge of the forfeiture, it [the insurer] recognizes the continued validity of the policy, or does acts based thereon [that is, I interpolate, upon such recognition], or requires the assured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived."

The opinion in the Kingman Case, 54 S. C., 599; 32 S. E., 762, states the law exactly as I interpret it:

"Waiver does involve the assent of the insurer, since it is 'the intentional relinquishment of a known right'; but this intent to relinquish the right to avoid a policy for breach of condition may be evidenced by acts or conduct of the insurer, after knowledge of a breach, recognizing the policy as a valid existing contract, or the insurer may be estopped to deny intent to relinquish its right by such conduct after knowledge of the breach as puts the insured to trouble and expense on the reasonable belief that the insurer regards the policy as valid."

In *Montgomery v. Insurance Co.,* 55 S. C., 1; 32 S. E., 723, the Court evidently did not intend to change the rule laid down in the Kingman Case, for it cites that case with approval, and adds:

"The question at last is: Has the insurer at any time relinquished the right to deny liability for the cause of removal after knowledge, or has it by its conduct recognized the policy as not invalid on such ground, and thereby sub-

jected the insured to expense or inconvenience, in the reason-
able belief that such removal was consented to or acquiesced
in by the insurer?"

In *Cobb v. Insurance Co.,* 78 S. C., 388; 58 S. E., 1099,
the Court reaffirms the doctrine of the Kingman and Mont-
gomery Cases in these words:

"But trouble taken by Cobb, plaintiff's manager, at the
instance of Norris, defendant's local agent, with the ac-
quiescence of its adjuster, in procuring signatures 'to the
statement of the value of stock, with reasonable belief that
the defendant regarded the policy as valid,' * * * would
ordinarily be some evidence of waiver."

The rule is very clearly stated in the case of *Queen Ins.
Co. v. Patterson Drug Co.,* 73 Fla., 665; 74 South. 807;
L. R. A. 1917D, 1091, quoting from *Antes v. Assurance Co.,*
84 Iowa, 355; 51 N. W., 7:

"Where the company, with full knowledge of the facts
out of which the forfeiture of the policy arose, by its acts
recognized the policy as a valid and subsisting contract, and
induced the plaintiff to act in that belief, and to incur trouble
and expense, such action would be a waiver of the condition
under which the forfeiture arose."

"In order to constitute a waiver by the insurer of a provi-
sion of the policy, there must be some affirmative act on its
part, such as to induce insured to rest on a well-founded be-
lief that strict performance of the condition claimed to be
waived will not be insisted upon, and mere neglect to insist
upon a forfeiture is of itself insufficient." *Rundell v. In-
surance Co.,* 128 Iowa, 575; 105 N. W., 112; 25 L. R. A.
(N. S.), 20.

"It is essential to the waiver of a forfeiture of a policy of
life insurance that there be a recognition of its validity, after
a knowledge of the forfeiture, by an agent who is not denied
by the policy the power to do it." *Lamb v. Insurance Co.,*
22 App. Div., 552; 48 N. Y. Supp., 123.

"Waiver is essentially a matter of intention, and to establish it there must be some declaration or act, from which the insured might reasonably infer that the insurer did not mean to insist upon a right which because of a change of position induced thereby that would be inequitable to enforce." *Shay v. Association,* 28 Pa. Super. Ct., 527.

In *New York L. Ins. Co. v. Eggleston,* 96 U. S., 572; 24 L. Ed., 841, it is said:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

Applying the principles thus announced by this and other Courts with absolute unanimity to the circumstances above detailed, relied upon by the plaintiff as evidence of an intention on the part of the company to waive the admitted infraction of the contract by him, and bearing in mind that the plaintiff is seeking support for his replication, in the evidence for the defendant, not in his own, and that he must take that evidence with its concomitant explanations and limitation:

As to the first circumstance, the request that the policy be left at the local agent's office: The agent of the insurance company testified that on the day after the fire he sent for the plaintiff, and when he came to the office asked him why he had not informed him of the additional insurance. "I told him that I didn't know what the company was going to do about it." Does that indicate that the agent in his negotiations "recognized the continued validity of the policy," or left Whaley "under the belief that his loss would be paid, the forfeiture waived"?

Thereafter, at what time does not clearly appear, the agent told Whaley to bring the policy to his office, which he

did.    Nothing happened in the meantime to after the agent's mental attitude as to the company's disposition of the claim; nothing which could be distorted into a recognition of the continued validity of the policy, or the creation of a belief on Whaley's part that the loss would be paid, and the forfeiture waived.    Surely, the agent had the right to a deposit and inspection of the policy, without committing the company to a waiver of the forfeiture.

As to the second circumstance, the request for a list of the furniture destroyed:    The agent, after having testified that as a general rule a request for an inventory was made, stated that the agent of the other company had requested the inventory, and that Whaley had made three or four of them and distributed them around; he being furnished with one which he retained in his office for the information of their adjuster when he came to adjust the loss.    The plaintiff must take this testimony as it is.

But assuming that the defendant's agent requested the inventory, and that it was furnished by Whaley, what does that amount to, in the absence of the essential elements of continued recognition of the validity of the policy, and the creation of a belief that the loss would be paid?    In the same section of R. C. L. from which an extract is made in the leading opinion, there is this statement:

"The mere fact that proofs are permitted to be made * * * is not a waiver of a forfeiture, * * * where the insurer, though requiring the insured to make proofs informs him that his claim is disputed."

And it would seem, in view of the necessity for its appearing, that there was a continued recognition of the validity of the policy, and the creation of a belief that the loss would be paid, that the expression of a doubt as to what disposition the company would make of the claim, would be equally fatal to the waiver.    How can it be contended that the company must be held to have intended to waive the forfeiture, to have recognized the continued validity of the policy, by

reason of the act of the agent when that act is accompanied by a distinct disavowal of such recognition? It need not be a denial of the claim, so long as there is no recognition of its validity. And further in the same section of R. C. L. it is said:

"There are decisions to the effect that estoppel against resisting an action to recover under an insurance policy does not arise from a request to make proof of loss and to furnish vouchers. The action of the insured in making such proofs is said to be referable to his contract, and the necessity of complying with it; and the request to him to make the preliminary proofs cannot be enlarged beyond its natural import, and converted into an engagement to waive any defense to which the insurer is otherwise entitled"— citing *Wheaton v. Insurance Co.,* 76 Cal., 415; 18 Pac., 758; 9 Am. St. Rep., 216. *Everett v. Insurance Co.,* 121 Ga., 228; 48 S. E., 918; 104 Am. St. Rep., 99. *Insurance Co. v. Miller,* 120 Pa., 504; 14 Atl., 385; 6 Am. St. Rep., 726.

The plaintiff did not go upon the stand; he did not testify to any act of the agent tending to show a recognition of the continued validity of the policy; he did not testify to his belief that the forfeiture would be waived. How could he, when the agent told him he did not know what course the company would take? In the absence of his statement as to what his belief was, can it be inferred from the statement of the agent that the plaintiff would have entertained the belief that his policy was going to be paid? Is it possible to conclude that anything that the agent did amounted to a recognition of the policy as a valid existing contract, or left Whaley under a reasonable belief that the company regarded the policy as valid, when the agent sent for him, reprimanded him about the additional insurance, and told him that he did not know what the company was going to do about it? In *Cobb v. Insurance Co.,* 78 S. C., 388; 58 S. E., 1099, the Court holds that:

"The mere expression of hope or confidence by the agent after the fire, that the insurance would be paid, is no evidence of waiver"—citing *Young v. Insurance Co.,* 68 S. C., 391; 47 S. E., 681 and *Joys v. Insurance Co.,* 54 S. C., 374; 32 S. E., 446.

If the expression of hope or confidence that the insurance would be paid is not an indication of recognition of the continuing validity of the contract, and therefore not evidence of waiver, how can the expression of a doubt have a greater effect? It will be observed in this case that, although the policy was delivered to the agent and the inventory furnished to him, there was not thereafter the suggestion of negotiations between him and the plaintiff looking to an adjustment of the loss. In *Young v. Insurance Co.,* 68 S. C., 387; 47 S. E., 681, it is said:

"It is hardly necessary to say that waiver cannot be implied from the act of the local agent in giving notice to the adjuster or the coming of the adjuster to Clinton to investigate the loss."

If not, how can it be said that the gathering together of the documents connected with the claim, the policy and inventory, upon which alone the adjuster was to determine whether to pay the loss or not, be so considered? In *Joye v. Insurance Co.,* 54 S. C., 371; 32 S. E., 446, it was held:

"It was suggested that the president of the company, by his letter to her dated April 22, 1897, had stated her claim would be paid, and thereby there was a waiver of the right to regard her policy as vitiated by her own act of failing to pay the assessments before the loss by fire. It is quite true such a letter was written, but it was followed by one some time afterwards denying all liability. There was no proof that any change in the condition of plaintiff had been the result of the first letter of the president."

Could there be a clearer case of the "light relinquishment" of a complete defense to the plaintiff's claim than the evidence here presents? Is there a single fact in the case which

even tends to show that the agent recognized the policy as
of continued validity, or was calculated to engender the be-
lief in the plaintiff that the company did not intend to insist
upon the breach?   Ordinarily the man who is in admitted
default assumes the burden of showing by clear evidence
that his default is excused by the conduct of the other party.
Here it seems that the defaulting party is the favored one
in the law, and by the flimsiest kind of evidence the party
sinned against is held to have assumed an attitude of prej-
udice to his conceded right.

I have little patience for this species of comminuted frac-
ture, which requires the splints of a jury's verdict to supply
the plaintiff with the means of locomotion.   I maintain that,
after the agent sent for the plaintiff, reprimanded him for
taking out additional insurance, and distinctly declined to
recognize the validity of the policy, by telling him that he
did not know what the company was going to do about it,
it is impossible to conceive the essential condition of a
recognition of the continued validity of the policy, from the
request that the policy be left in his office or that an inven-
tory be furnished—matters that he had the right to call for,
entirely consistent with a disposition to stand upon legal
rights, and therefore not indicative of a purpose to waive
them.

"No implication of a waiver of the terms of a [policy of
insurance] can arise from acts which may be construed as a
compliance with such terms."   *Parker v. Knights,* 70 Neb.,
268 ; 97 N. W., 281.

The fact that an insurance company, after notice that
additional insurance had been taken in another company
without its consent, contrary to the policy, requested the
holder to write out and present his claim, is no waiver of
the condition against such additional insurance against its
Consent.   *Phoenix Ins. Co. v. Stevenson,* 78 Ky., 150.

"An oral direction by the insurance agent to assured, af-
ter a fire, the agent knowing of the fire, and that assured had

additional insurance, to prepare proofs of loss, does not waive the provisions in the policy as to additional insurance." *Frankfurter v. Ins. Co.,* 10 Misc. Rep., 157; 31 N. Y., Supp., 3.

"Where  *  *  *  the company claims an overinsurance, the fact that the assured is required to furnish, at some expense to himself, an estimate of his loss, and the value of the house destroyed, in accordance with the terms of the policy, will not amount to a waiver of the breach of warranty." *Boyd v. Ins. Co.,* 90 Tenn., 212; 16 S. W., 470; 25 Am. St. Rep., 676.

To the same effect is *Bonneville v. Assur. Co.,* 68 Wis., 298; 32 N. W., 34.

As to the third circumstance, retaining and not returning the premium which had been paid: It appears that under the terms of the policy the company was allowed 60 days after the submission of proofs of loss within which to act upon the circumstances of the fire and declare its election to pay the loss or to decline it. As a matter of fact no proofs of loss were ever furnished; only an inventory, without valuations, of the furniture claimed to have been destroyed. But, considering that as a compliance with the requirements, within the time allowed to the company to exercise its election the amount of the premium was tendered to the plaintiff about 40 days after the inventory was furnished.

In view of the burden, cast by the law upon the plaintiff, to show by some affirmative, not negative, act on the part of the company that it deliberately recognized the continued validity of the policy, I think that the circumstance that the company tendered a return of the premium, within the time it was allowed by the contract to exercise its election, is an outstanding fact repelling any possible inference of its intention to waive a perfectly valid defense, by a failure earlier to return the premium. If retaining the premium 40 days is evidence of a waiver, why not 30, or 20, or 10 or 1?

But, aside from this suggestion, I think that the authorities everywhere, and particularly in this state, recognizing the distinction between waiver and estoppel, sustain the proposition, that, when the breach of a condition is not discovered until after the loss, no act on the part of the insurance company can constitute a waiver of the breach of the contract, short of actual payment of the loss, or a new contract upon a new consideration. Of course, if after the loss the insurance company acquires knowledge of the breach, and does an act recognizing the continued validity of the policy, in consequence of which the insured, acting upon a reasonable belief that the breach will not be insisted upon, subjects himself to trouble or incurs expense, so that it would be inequitable to permit the insurance company to resume its claim to immunity, the insurance company will be estopped from doing so. It is equally true that, if the insurance company, before the loss acquires knowledge of the breach, and takes no steps to exercise its right to cancel the policy and return the premium, but allows the insured to continue under the impression that his policy is good, thus preventing him from protecting himself in other insurance, in the event of a loss the insurance company will be held either to have waived its right 'to insist upon the breach or to be estopped from doing so.

In the case of *Pearlstine v. Insurance Co.*, 70 S. C., 75; 49 S. E., 4, the precise question arose and was decided. The insurance company defended upon the ground that the plaintiff was not the unconditional and sole owner of the property insured; that that fact, constituting a breach of a condition in the policy, was not discovered until after the loss. The plaintiff countered by contending that the company, after knowledge of the breach and after the fire, failed to return the premium, and thereby waived the breach. The Court said in reference to this contention:

"The defendant next submits there was error in refusing to charge that a failure to return the premium after the fire

13—S. C.—124

does not amount to waiver of any of the conditions of the policy. Good faith would seem to require the insurer to cancel the policy and return the unearned premium, if before the fire, while the policy was current, it had notice that the insured had so violated the policy that under its terms he would recover nothing in case of loss. In such case the insurer would allow the insured to hold the policy and rely upon its provisions, while at the same time it retained the consideration for the unexpired term, knowing the policy to be valueless. For this reason, the retention before the fire of the unearned premium for the unexpired term, with notice that the policy had become void under its terms, may be held evidence of waiver. It is held in *Schroeder v. Insurance Co.,* 51 S. C., 180; 28 S. E., 371, that if an insurance company actually received the premium after the fire, knowing that other insurance had been taken, in violation of the policy, this would be evidence of its election to waive the violation. Where, however, the premium is void, and in consideration of it the company contemporaneously issues its policy, which is a contract to insure on certain conditions therein mentioned, and the insured violates those conditions in a material particular without the knowledge of the insurer, in case of loss the insurer is not bound to return the considerations of the policy before standing upon its terms. The consideration has been paid, not for an absolute promise, but for a promise of the insurer to hold itself liable for loss on certain conditions. The company does not fail in its promise by insisting on its conditions; not having broken its contract, it has a right to retain the consideration. The insured has received all he contracted and paid for, conditional insurance, and he has no right to demand a return of the price paid from the insurer on pain of liability for unconditional insurance. After the loss occurs as to the property destroyed, the policy is no longer current, but has become matured by reason of the fire, and no question of good faith is involved in retaining the premium, because the rights

of the parties are then fixed.   Upon these considerations rest *Norris v. Insurance Co.,* 55 S. C., 450; 33 S. E., 566; and *Young v. Insurance Co.,* 68 S. C., 387."

This case has not been overruled, or even modified, so far as I am advised; on the contrary, it has been cited with approval in *Powell v. Insurance Co.,* 97 S. C., 375; 81 S. E., 654.   *Etheredge v. Insurance Co.,* 102 S. C., 313; 86 S. E., 687, and reveral others upon a different point.   In *Young v. Insurance Co.,* 68 S. C., 387; 47 S. E., 681, it is said:

"It has been held in *Norris v. Insurance Company,* 55 S. C., 450; 33 S. E., 566, that retention of the premium after the fire was no evidence of waiver."

In *McBryde v. Insurance Co.,* 55 S. C., 589; 33 S. E., 729; 74 Am. St. Rep., 769, the Court said:

"All the testimony as to waiver related to facts occuring after the property had been destroyed.   Under these circumstances there was no foundation upon which waiver could be predicated."

In a note to 25 L. R. A. (N. S.), 1, it is said:

"It is manifest that the situation of the parties is different, where the insurer acquires knowledge after loss of a breach of the policy occurring before loss, than it is where notice reaches him before loss.   Aside from the requirements in respect to proofs of loss, the contract has fulfilled its purpose when the event which it provides against has happened.   The rights of the parties are then fixed.   There is no possibility that the insured can be misled to his harm by silence or nonaction of the company as to any breach of the policy which occurred before loss.   The company, of course, may pay if it wishes; but if it fails to let the insured know what it intends to do, the latter cannot be injured, for, after loss, it is too late for him to get other insurance.   Therefore it would seem to be the logical result of this situation, not only that mere silence or nonaction on the part of the company will not affect its rights, but that any direct act in the nature of waiver, any promise to pay, after knowledge of the

breach, must be based on a good consideration, or else the elements of a technical estoppel must be present; that is, the company, by its conduct, must have put the insurer to some disadvantage, or caused him some expense, before it can be made liable.    This in itself would be consideration enough to support an implied promise to pay.    The cases appear to be harmonious in holding that where notice of breach of the policy before loss has not reached the insurer until after loss, mere silence or nonaction will not operate to bind the latter."

The evidence strongly tends to show, if the testimony of the agent be believed, that the plaintiff knew that the consent of the defendant to additional insurance was necessary. His misrepresentation to the attorney, and to the agent of the company from whom he obtained the second policy, that there was no other insurance upon the property, is confirmatory also of this knowledge.

Another consideration leads me to a conclusion contrary to that announced in the leading opinion:    The provision in the policy relating to additional insurance is as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance," etc.

The Supreme Court of the United States has held in the case of *Assurance Co. v. Building Ass'n,* 183 U. S., 308; 22 Sup. Ct., 133, 46 L. Ed., 213, that:

"Provisions contained in fire insurance policies, that such a policy shall be void and of no effect if other insurance is placed on the property in other companies without the knowledge and consent of the insuring company, are usual and reasonable.  *  *  *  It is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by indorsement upon the policy, or by other writing."

Is it not a remarkable proposition to entirely ignore such reasonable condition, and to cast it into the discard, upon evidence of the parol conduct of a local agent? Of course the company is at liberty to waive that condition as fell as any other in the policy; but what is the solemn agreement of the parties worth, if it can be superseded by the conduct or act of a local agent, not even in writing?

It is held by this Court in the second appeal of the *Pearlstine Case,* 74 S. C., 246; 54 S. E., 372, not entirely in accord with the case of *Assurance Co. v. Building Association,* 183 U. S., 308 22 Sup. Ct., 133; 46 L. Ed., 213, which is specifically referred to, that where an agent, at the time of issuing the policy, has knowledge of the invalidating circumstances, his knowledge is imputed to the company, notwithstanding the provision for indorsing the company's consent on the policy. But I venture to say that no case can be found applying the same rule to a case in which the knowledge of the agent has been acquired after the loss.